NOTICE
Decision filed 12/27/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 190340-U

NO. 5-19-0340

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 19-CF-29 |
| | ) | |
| JONATHAN BIENIEK, | ) | Honorable |
| | ) | Jerry E. Crisel, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Justices Wharton and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: The defendant's convictions are affirmed because the prosecutor's remarks during closing argument did not improperly bolster the victim's credibility, served a purpose other than to inflame the passions of the jury, and did not result in substantial prejudice and constitute a material factor in the defendant's conviction. The defendant's sentence is affirmed as the trial court did not improperly consider the victim's age, that the defendant's conduct threatened physical harm, or the court's personal knowledge and beliefs regarding the psychological impact of sexual abuse on children.

¶ 2    Following a jury trial, the defendant was convicted of two counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2018)). He was sentenced to two consecutive 25-year terms in the Illinois Department of Corrections (IDOC) followed by mandatory supervised release for a period of 3 years to life. On

1

appeal, the defendant contends that he was denied a fair trial because, during closing arguments, the prosecutor improperly bolstered the victim's credibility and made comments designed to inflame the passions of the jury. The defendant also contends that the trial court relied on improper factors in aggravation when sentencing him. For the following reasons, we affirm the defendant's convictions and sentence.

¶ 3                                    BACKGROUND

¶ 4      The defendant was charged with two counts of predatory criminal sexual assault of a child. The charges alleged that the defendant, who was 17 years of age or older, committed acts of sexual penetration by placing his penis in the mouth and the anus of R.H., who was under the age of 13. The defendant is R.H.'s biological father. A summary of the evidence produced at the defendant's trial is as follows.

¶ 5      On December 6, 2018, R.H. was upset and crying at school. He was taken to the classroom of Monica Maxey, a special education teacher who works with children who have behavioral disorders, learning disabilities, and autism. R.H. laid down on some cushions in the back of Maxey's classroom and was kicking the wall and hitting the floor with his fists. Maxey told R.H. that it would be helpful to write down why he was upset and gave him paper and a pencil. R.H. wrote:

> "When I try to help I always get in trouble. If I keep on being bad I will
> not have Christmas. That darn tape diagram made me angry. My parents
> keep on being mean to me and my dad keep on hitting me when I am in
> trouble."

2

After seeing what R.H. had written, Maxey asked Stephanie Reynolds, R.H.'s teacher, to take R.H. to the school nurse's office to be checked for signs of physical abuse.

¶ 6 Susan Gieselman, the school nurse, checked R.H.'s body for "bumps and bruises" but did not find any. R.H. told Gieselman and Reynolds that the defendant hit R.H. with a spoon, picked him up by the throat, and hit him on the head. R.H. also disclosed that one night, the defendant came home from work, went into R.H.'s room, and had "S-E-X" with R.H. He explained that the defendant "put it in my butt." R.H. did not provide any further specifics. Gieselman and Reynolds did not ask R.H. any further questions and contacted the Department of Children and Family Services (DCFS).

¶ 7 DCFS investigator Brian Ussery contacted Detective Bobby Wallace of the Jefferson County Sheriff's Office. Detective Wallace and Ussery arranged for R.H. to be taken to the Amy Schultz Child Advocacy Center (CAC) for an interview on December 7, 2018. A recorded copy of the forensic interview was played for the jury at the defendant's trial.

¶ 8 Taylor Parker, a forensic interviewer at the CAC, interviewed R.H. During the interview, R.H. indicated that he did not want to talk about the defendant because of "S-E-X." Parker asked if there was something R.H. did not like about the defendant, and R.H. replied "S-E-X." R.H. then told Parker that the defendant hit R.H. in the head; spanked R.H. with a belt, spoon, and his hand; hit R.H.'s feet with a spoon and his hand; hit R.H.'s hands when R.H. touched people; choked R.H.; and covered R.H.'s mouth, telling him "shush, shush." R.H. also stated that the defendant put R.H. on his bed and that he could not breathe. In the video, R.H. demonstrated by covering his face with one

hand and placing his other hand behind his head. R.H. stated that he had previously told his mother about the abuse, stating that he believed his mother "was going to do something about it, but she didn't." R.H. indicated that he quit telling his mother about the abuse.

¶ 9     R.H. also told Parker that the defendant "keeps on putting his bad part" in R.H.'s butt and mouth. Using a body chart of a male, R.H. identified the "bad part" as the penis. R.H. indicated that when the defendant put his penis in R.H.'s mouth, it tasted disgusting. R.H. further indicated that the when the defendant puts his penis in R.H.'s butt, "pee starts to come out." R.H. stated that he would dry the "pee" and put on new underwear. R.H. told Parker that the incidents occurred in the shower and his bedroom. Parker asked R.H. how this made his body feel. R.H. replied "better when [the defendant] stopped doing it." Parker then asked how R.H.'s body felt when the defendant "was doing that." R.H. replied "not happy." Parker asked R.H. if anyone had hurt his body before, and R.H. replied "dad." R.H. indicated that no one else had hurt his body before.

¶ 10    After R.H.'s interview, Detective Wallace asked R.H.'s mother, Shayla Hast, to go to the sheriff's office for an interview. At the sheriff's office, Detective Wallace asked Hast to contact the defendant and request that he come to the sheriff's office as well. Hast complied, and the defendant responded to the sheriff's office. After interviewing Hast, Detective Wallace interviewed the defendant. A recorded copy of the defendant's interview was played for the jury.

¶ 11    At the beginning of his interview, the defendant was read his *Miranda* rights, and he acknowledged that he understood those rights. Detective Wallace informed the

4

defendant that R.H. had made allegations of abuse. The defendant admitted that when R.H. gets in trouble, the defendant disciplines R.H. by swatting R.H. on the butt or slapping his hands. The defendant denied hitting R.H. with a belt and claimed that the belt was used to scare R.H. The defendant also denied hitting R.H. with a spoon and claimed that the defendant "tapped" R.H. on his feet with a spoon because he was kicking people.

¶ 12   Detective Wallace also informed the defendant that R.H. made allegations of sexual abuse. The defendant indicated that he did not know why R.H. made those allegations. The defendant told Detective Wallace that the defendant had caught R.H. and a friend looking up sex on a tablet and playing "doctor." The defendant also told Detective Wallace that R.H. had an infection on his penis and that he and Hast had to help R.H. "put it on there." Detective Wallace subsequently told the defendant that R.H. alleged that the defendant put his penis in R.H.'s mouth. The defendant denied this allegation. Detective Wallace asked the defendant "what would even be close" to the defendant's penis being in R.H.'s mouth. The defendant responded by telling Detective Wallace that R.H. used to shower with the defendant and that R.H. had walked in on the defendant while he was changing. Detective Wallace told the defendant that R.H. also alleged that on at least two occasions, the defendant put his penis in R.H.'s anus. The defendant denied this allegation, and the interview subsequently ended.

¶ 13   On January 10, 2019, R.H. was examined by Dr. Kathy Swafford, a pediatrician and expert in the field of child sexual abuse. When Dr. Swafford examined R.H., she did not make any findings of physical or sexual abuse. Dr. Swafford confirmed, however,

that she did not expect to make any findings of sexual abuse given the time between R.H.'s disclosure and Dr. Swafford's examination of R.H. Dr. Swafford testified that typically, DNA or signs of trauma would not be present after 72 hours. Dr. Swafford further testified that DNA or other physical evidence may be present at a maximum of seven days, and that she would not expect any findings beyond seven days. Dr. Swafford explained that both the anus and mouth heal quickly, and that it was not unusual to have no physical findings of anal or oral penetration. Dr. Swafford stated that even if there was enough trauma to cause bleeding or pain, no physical findings may be present if the examination occurred outside the "immediate period." Dr. Swafford's examination of R.H. occurred 35 days after R.H.'s disclosure on December 6, 2018.

¶ 14 R.H. testified that he felt uncomfortable when he was hit by the defendant. When asked if the defendant did anything else to make R.H. uncomfortable, R.H. replied that the defendant was "doing a really bad thing" to R.H. He stated that the defendant "was putting his bad part" in R.H.'s mouth and butt. R.H. further testified that when the defendant did this, "pee" came out of the defendant's body. R.H. indicated that the incidents occurred in his bedroom and the bathtub and that he did not tell his mother about the incidents. R.H. testified that he knew what sex was because he had previously heard his mother and the defendant having sex. R.H. further testified that he had seen videos of sex on his friend's tablet.

¶ 15 The defendant testified that the week R.H. disclosed the alleged abuse, R.H. had been in trouble at school. The defendant stated that he and Hast told R.H. that he would be kicked off the basketball team if he did not improve at school. They also told R.H. that

6

Santa Claus may not come for Christmas if he continued behaving badly. The defendant denied that he choked or "excessively beat" R.H. The defendant admitted, however, that he was a strict parent and hard on R.H. Throughout his testimony, the defendant denied sexually abusing R.H.

¶ 16 The jury found the defendant guilty of both counts of predatory criminal sexual assault of a child. The defendant did not file a posttrial motion. At sentencing, the parties presented evidence in aggravation and mitigation. After hearing the evidence and arguments from the parties, the trial court found the following factors in aggravation applied to the defendant's sentence: (1) the defendant's conduct caused or threatened to cause serious harm, (2) the need for deterrence, and (3) the defendant held a position of trust or supervision. In mitigation, the trial court found that the defendant lacked a criminal history, noting that it was "practically nonexistent." The trial court also considered the defendant's service in the United States Navy. The trial court sentenced the defendant to two consecutive 25-year terms in IDOC followed by mandatory supervised release for a period of 3 years to life. The defendant was ordered to pay restitution for R.H.'s counseling. The defendant did not file a postsentencing motion. This appeal follows.

¶ 17                                ANALYSIS

¶ 18                        I. Prosecutorial Misconduct

¶ 19 The defendant contends that the prosecutor made several improper remarks during closing argument that deprived him of a fair trial by improperly bolstering R.H.'s credibility and making arguments designed to inflame the passions of the jury. The

7

defendant did not, however, object to the prosecutor's allegedly improper remarks during trial or challenge the remarks in a posttrial motion. Accordingly, the defendant's claims are reviewable only for plain error.

¶ 20    The plain error doctrine allows this court to review unpreserved errors when either the evidence is close, regardless of the seriousness of the error, or the error is serious, regardless of the closeness of the evidence. *People v. Holmon*, 2019 IL App (5th) 160207, ¶ 46. The first prong of the plain error analysis is applicable when the evidence is so closely balanced that the claimed errors alone were sufficient to tip the scales of justice against the defendant. *Holmon*, 2019 IL App (5th) 160207, ¶ 46. The second prong is applicable when any of the claimed errors were so serious that they undermined the fairness of the defendant's trial or the integrity of the judicial process. *Holmon*, 2019 IL App (5th) 160207, ¶ 46. Under either prong, the burden of persuasion lies with the defendant. *People v. Herron*, 215 Ill. 2d 167, 187 (2005). The first step in plain error analysis, however, is to determine whether error occurred at all. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 21    Generally, prosecutors enjoy considerable latitude in closing argument. *Holmon*, 2019 IL App (5th) 160207, ¶ 49. A defendant seeking the reversal of his or her conviction based upon improper remarks made during closing argument faces a difficult burden. *Holmon*, 2019 IL App (5th) 160207, ¶ 48. In reviewing a prosecutor's challenged remarks, the reviewing court asks whether the challenged remarks engender substantial prejudice against the defendant such that it is impossible to say whether or not the guilty verdict resulted from the improper remarks. *People v. Gutierrez*, 402 Ill. App. 3d 866,

895 (2010). Reversal is only warranted if the prosecutor's remarks resulted in substantial prejudice to the defendant and constituted a material factor in the defendant's conviction. *Gutierrez*, 402 Ill. App. 3d at 895. The challenged remarks must be considered in the context of closing argument as a whole. *Holmon*, 2019 IL App (5th) 160207, ¶ 51.

¶ 22    Before we address the defendant's challenges to the prosecuting attorney's closing argument, we believe a brief overview of the defendant's theory of the case is helpful to provide context for our analysis. In opening statement, defense counsel told the jury that the State would not present DNA or physical evidence linking the defendant to a crime. Defense counsel stated that the jury would not hear any evidence, other than R.H.'s testimony, that suggested the defendant committed a crime. Defense counsel also told the jury that counsel would point out questionable facts and statements made by R.H., and that "when a story doesn't add up, it means the truth wasn't part of the equation." Defense counsel characterized the case as a "classic case of he said, he said."

¶ 23    Throughout the State's case in chief, defense counsel questioned the State's witnesses regarding the lack of findings of physical and sexual abuse. Defense counsel cross-examined R.H. about being punished by the defendant for getting in trouble at school and about lying. In his testimony, the defendant testified that R.H. had behavioral issues and got in trouble for lying. The defendant further testified that R.H. was having behavioral issues the week he disclosed the alleged abuse. The defendant indicated that he and Hast had threatened to kick R.H. off the basketball team and that Santa Claus would not come if R.H. continued misbehaving. With this context in mind, we turn to the defendant's challenges to the prosecutor's remarks.

9

¶ 24                          A. Improper Bolstering

¶ 25    " 'The hallmark of improper bolstering involves an expression of a prosecutor's personal belief in the credibility of a witness.' " *People v. Miller*, 2020 IL App (1st) 163304, ¶ 51 (quoting *People v. Phagan*, 2019 IL App (1st) 153031, ¶ 67). Prosecutors are allowed to comment on the evidence and reasonable inferences from the evidence, including a defendant's credibility or the credibility of the defense's theory of the case. *People v. Williams*, 2015 IL App (1st) 122745, ¶ 12. Prosecutors may not, however, vouch for the credibility of a government witness or use the credibility of the state's attorney's office to bolster a witness's testimony. *Williams*, 2015 IL App (1st) 122745, ¶ 12. A prosecutor may reflect upon a witness's credibility if it is based on facts in the record or inferences fairly drawn from those facts, or if they are invited responses to the comments made in the defendant's closing argument. *People v. Robinson*, 254 Ill. App. 3d 906, 919 (1993).

¶ 26    The defendant alleges that numerous remarks made during the prosecutor's closing argument were improper. The first three challenged remarks are as follows:

"The defense is going to have you believe that this kid is such a deceitful, mastermind of lying that he could not only tell you that dad is doing this but give you details. He's that evil genius."

"How is it that [R.H.] has those details that the Defendant corroborates if he's not telling the truth? Because he is."

"[R.H.] came in here like a champ and told you what that man did to him, and you may consider that as evidence."

10

These remarks, however, were neither expressions of personal opinion regarding R.H.'s credibility nor references to, or invocations of, the integrity of the state's attorney's office. Further, nothing about these remarks can be construed as some implication that the prosecutor believed R.H. was credible based on the prosecutor's personal knowledge or that R.H.'s testimony had the approval of the state's attorney's office. Thus, we do not find that these remarks constituted improper bolstering.

¶ 27    The next alleged improper remark is:

"And it is no wonder that 35 days later she found nothing. Don't hold that against [R.H.] [R.H.] is not the decision maker in this. He can't get himself there. And it sounded like everyone thought from the report, when he's talking about his father's new job, which was back in August, September, he discloses in December, the assumption was the abuse was long enough ago that we're still not going to find anything. You know, had they even taken him within that 24 hours, no one bothered to ask [R.H.] when the abuse occurred. Perhaps it had already been past that 72, and they still wouldn't have found anything. Don't hold that against [R.H.] Hold that against the adults who don't ask the right questions."

Like the previous challenged remarks, this remark was not an expression of personal opinion regarding R.H.'s credibility, nor a reference to or invocation of the integrity of the state's attorney's office. Rather, the prosecutor's remark was based upon the testimony of Dr. Swafford and directed at the defendant's theory of the case, which relied in part on the lack of physical findings of sexual abuse. By telling the jury not to hold the

11

lack of physical findings against R.H., the prosecutor was not vouching for R.H.'s credibility. The prosecutor was arguing that R.H.'s testimony was sufficient to convict the defendant and that physical findings were not required. Indeed, the prosecutor's remark was prefaced by the prosecutor stating: "When you get those jury instructions, *** you are not going to get anything that says to convict [the defendant] you have to have physical findings." Thus, we do not find that this challenged remark constituted improper bolstering.

¶ 28    The final comment challenged by the defendant is:

"[Defense counsel] asked [R.H.] did you tell your mom about the physical and sexual abuse, and [R.H.] said no. He didn't ask it right. Did you tell [R.H.] or—did you tell your mom about the physical and sexual abuse prior to today? Why is that important? We don't know what [R.H.] was thinking when he answered the question as to when. [R.H.] didn't tell his mom on this occasion that dad did it. That came through the school, DCFS and Bobby Wallace. He asked him did you tell her about the sexual and physical abuse? No. But we have no idea what [R.H.] was thinking at the time, and I submit that he was thinking this time did I tell her. This time did he tell her. He didn't ask [R.H.] the right question. He got on to Taylor Parker for not asking the right question. He didn't ask the right question."

This remark was made during the prosecutor's rebuttal closing argument and was made in direct response to the defendant's closing argument where counsel attempted to discredit R.H.'s testimony. Defense counsel had argued that R.H. made an inconsistent

12

statement about whether he told his mother about the alleged abuse. In his CAC interview, R.H. indicated that he told his mother about the alleged abuse but also said he quit telling her about the abuse. At trial, R.H. testified that he told his mother that the defendant was hitting R.H., but not about "S-E-X." In the defendant's closing argument, defense counsel contended that this alleged inconsistency tainted R.H.'s testimony. The prosecutor's challenged remark was made in an attempt to explain the alleged inconsistency, and thus, not improper. Finally, this remark was neither an expression of personal opinion nor a reference to, or invocation of, the integrity of the state's attorney's office. Thus, we do not find that the prosecutor improperly bolstered R.H.'s credibility by making the foregoing argument.

¶ 29                                    B. Inflaming the Passions of the Jury

¶ 30    The defendant also argues that the prosecutor made numerous arguments which only served to inflame the passions of the jury. Although prosecutors are afforded wide latitude, closing arguments must serve a purpose beyond inflaming the emotions of the jury. *People v. Darr*, 2018 IL App (3d) 150562, ¶ 71. Inflaming the passions of the jury is not directly barred so long as any commentary that does so serves a different, proper purpose. *Darr*, 2018 IL App (3d) 150562, ¶ 71.

¶ 31    The first remark the defendant argues improperly inflamed the passions of the jury is:

"Imagine if I asked you to come out in the hallway with me and tell me your sex life? Does that make you a little uneasy, a littel [*sic*] embarrassed, a little tense? What if I said take that stand right there and tell

13

all of us your sex life? Would you all feel uncomfortable? Would you want to do that? Imagine that it's not sex with someone you know but someone who has assaulted you. Come tell all of us that. Tell them how they violated your body. Now imagine that person is someone you trusted, and you are an eight-year-old boy, and you have been asked to come in here in front of a room full of strangers and tell dad put his penis in your anus, that he puts his penis in your mouth. I don't know many adults that could do that, but [R.H.] did because it's important to him. It's important that you know what dad did to him."

¶ 32     The prosecutor's comment here is similar to a prosecutorial comment made during closing argument in *People v. Darr*, 2018 IL App (3d) 150562. In *Darr*, the prosecutor stated, " 'You put your eyes in the eyes of a young child and imagine, as she told us, imagine what it was like to be subjected to the actions that she was subjected to.' " *Darr*, 2018 IL App (3d) 150562, ¶ 70. The Third District, in *Darr*, found that this comment was permissible because it served a purpose other than to inflame the passions of the jury. *Darr*, 2018 IL App (3d) 150562, ¶ 72. There, the victim was the only direct witness to the defendant's conduct, and the State had to rely on circumstantial evidence to corroborate the victim's story. *Darr*, 2018 IL App (3d) 150562, ¶ 72. As part of their strategy, the State introduced evidence that others had noticed a marked difference in the victim's personality from the time the victim was a young child to the time the victim was a teenager, a period that roughly correlated to the defendant's crimes. *Darr*, 2018 IL App (3d) 150562, ¶ 72. The Third District explained that "[i]n asking the jury to put

14

themselves in [the victim]'s shoes, the State was evoking the inference that being the victim of repeated sexual abuse would explain why [the victim] transformed from being outgoing to withdrawn." *Darr*, 2018 IL App (3d) 150562, ¶ 72.

¶ 33    Here, R.H. was the only direct witness to the defendant's conduct. During the trial, the defense aimed to discredit R.H. and show that R.H. was not being truthful about the allegations of sexual abuse. The prosecutor's remark countered the defendant's position and highlighted the difficulties R.H. faced in disclosing the sexual abuse perpetrated by his biological father and then testifying about the abuse in court. Thus, the prosecutor's remark served a proper purpose beyond inflaming the passions of the jury.

¶ 34    The next remark the defendant challenges is:

> "He was lying to his parents about getting in trouble at school, to his dad. Why? Because he knew what was coming. It was physical and sexual abuse. That's what he was facing when he went home if he got in trouble at school."

The defendant argues that this remark only served to inflame the passions of the jury because it misstated the evidence in that no evidence was presented at trial that the alleged sexual abuse was a form of punishment. While it is improper for a prosecutor to misstate the evidence, a prosecutor's misstatement does not necessarily require a new trial. *People v. Jackson*, 2012 IL App (1st) 102035, ¶ 18. Indeed, reversal is only warranted if the prosecutor's remarks resulted in substantial prejudice to the defendant and constituted a material factor in the defendant's conviction. *Gutierrez*, 402 Ill. App. 3d at 895.

15

¶ 35     Although the evidence at trial did not establish that the defendant sexually abused R.H. as a form of punishment, the prosecutor's misstatement was isolated. The challenged remark was followed up by the prosecutor arguing:

> "This child is acting out, and he wants you to believe that because of those behavioral issues, that is crazy. I can't imagine what this child was living through, and now he has to go home to physical and sexual abuse and have no issues with acting out. That is unheard of."

Viewing the challenged remark in context of the closing argument as a whole, the prosecutor's overarching argument was that R.H.'s issues stemmed from the physical and sexual abuse inflicted upon him by the defendant, not that the defendant sexually abused R.H. as a form of punishment. Thus, we find that its effect was *de minimis* and did not constitute a material factor in the defendant's conviction.

¶ 36     The final remark the defendant claims to have inflamed the passions of the jury, with emphasis on the challenged portion, is as follows:

> "What makes sense is that we have a little boy who doesn't even know that man until he's five. *A man that the mother had to track down. A man that refused to acknowledge his son until a paternity test was done*." (Emphasis added.)

The defendant argues that this remark "did not shed light on any of the issues to be determined, but instead was used to appeal to the emotions of the jury by characterizing [the defendant] as a man who did not want to take care of his obligations as a parent." But again, the challenged remark must be viewed in context of closing argument as a

16

whole. Here, the prosecutor was arguing why the defendant's theory did not make sense. The prosecutor highlighted the fact that R.H. did not know the defendant until R.H. was five years old. The challenged portion of the prosecutor's argument was based on the evidence presented at trial and provided context for why R.H. did not know the defendant until R.H. was five years old. Therefore, we find that the challenged remark served a purpose other than to inflame the passions of the jury.

¶ 37                       C. Ineffective Assistance of Counsel

¶ 38   The defendant also argues that he was denied effective assistance of counsel because defense counsel failed to object to the prosecutor's allegedly improper remarks. To demonstrate ineffective assistance of counsel, a defendant must show that his counsel's performance fell below an objective standard of reasonableness, and that, but for counsel's deficient performance, there is a reasonable probability the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). If a defendant cannot satisfy both prongs of this test, the claim must fail. *Strickland*, 466 U.S. at 697. The showing of *Strickland* prejudice is similar to the prejudice required for a prosecutor's improper remarks because the defendant must show "that real justice was denied or that the verdict resulted from counsel's failure to object." *People v. Perry*, 224 Ill. 2d 312, 347 (2007). Because we have already determined that the defendant is not entitled to a new trial based on the challenged remarks, the defendant cannot show that counsel's failure to object caused the type of prejudice *Strickland* requires. See *Perry*, 224 Ill. 2d at 350.

17

¶ 39                      II. Consideration of Factors at Sentencing

¶ 40     The defendant contends that the trial court relied on the following improper factors in aggravation when fashioning the defendant's sentence: (1) R.H.'s age, (2) the physical harm endured by R.H., and (3) the court's personal knowledge and beliefs regarding the psychological impact of sexual abuse on children. As with his claim of prosecutorial misconduct, the defendant failed to preserve this issue for appellate review by failing to object or by filing a postsentencing motion. Thus, his claims of sentencing error are reviewable only for plain error.

¶ 41     The plain error doctrine allows a reviewing court to consider unpreserved error at sentencing when a clear and obvious error occurred and (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). Under either prong, the defendant bears the burden of persuasion. *Hillier*, 237 Ill. 2d at 545. First, we must determine whether error occurred at all. *People v. Johnson*, 347 Ill. App. 3d 570, 574 (2004).

¶ 42     Whether the trial court relied upon an improper factor when imposing sentence ultimately presents a question of law subject to *de novo* review. *People v. Cervantes*, 2014 IL App (3d) 120745, ¶ 44. When considering this question, a reviewing court should consider the record as a whole, rather than focusing on a few words or statements by the trial court. *People v. Dowding*, 388 Ill. App. 3d 936, 943 (2009). An isolated remark, although improper, does not necessarily require that the defendant be resentenced. *Cervantes*, 2014 IL App (3d) 120745, ¶ 44. Rather, the defendant must show

18

that the trial court relied on the improper sentencing factor when imposing sentence. *Dowding*, 388 Ill. App. 3d at 943. Remand for resentencing is only necessary where a reviewing court is unable to determine the weight given to an improperly considered factor. *People v. Newlin*, 2014 IL App (5th) 120518, ¶ 23. If it can be determined from the record that the weight placed upon the improperly considered aggravating factor was insignificant and did not lead to a greater sentence, remand is not necessary. *Newlin*, 2014 IL App (5th) 120518, ¶ 23.

¶ 43　Before addressing the defendant's sentencing arguments, we note that the defendant was convicted of two counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2018)). Each count carried a range of punishment of 6 to 60 years in IDOC. See 720 ILCS 5/11-1.40(b)(1) (West 2018). The defendant was also subject to mandatory consecutive sentencing. See 730 ILCS 5/5-8-4(d)(2) (West 2018). Thus, the defendant's sentencing range was 12 to 120 years in IDOC. The trial court sentenced the defendant to consecutive 25-year terms for a total of 50 years—70 years below the maximum term allowed. Consequently, the defendant's sentence is well within the statutory limits and is presumptively valid.

¶ 44　　　　A. The Trial Court's Consideration of the Victim's Age

¶ 45　The defendant argues that the trial court improperly considered R.H.'s age during the sentencing hearing because R.H.'s age was inherent in the offenses, resulting in a double enhancement. As a general rule, a factor that is inherent in the offense for which a defendant has been convicted cannot also be used as an aggravating factor in determining the defendant's sentence. *People v. Bunning*, 2018 IL App (5th) 150114, ¶ 15. Stated

19

another way, a single factor cannot be used both as an element of an offense and as a basis for imposing a harsher sentence than might otherwise have been imposed. *People v. Phelps*, 211 Ill. 2d 1, 11-12 (2004). The rationale for this prohibition against "double enhancement" is based upon the assumption that our legislature considered the factors inherent in an offense when designating the range of punishment. *Bunning*, 2018 IL App (5th) 150114, ¶ 15. The rule that a trial court may not consider a factor inherent in the offense should not be applied rigidly because sound public policy demands that a sentence be varied according to the circumstances of the offense. *Bunning*, 2018 IL App (5th) 150114, ¶ 15.

¶ 46 At sentencing, the trial court made references to R.H. being a young child. The defendant argues that these references to R.H.'s young age made it clear that the trial court was relying on R.H.'s age as an aggravating factor. We disagree.

¶ 47 Trial courts are not required to refrain from any mention of sentencing factors that constitute the elements of an offense. *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 15. Thus, the trial court may consider whether the victim was "particularly young" even though the victim's age is an element of the offense for which the defendant was convicted. *People v. Thurmond*, 317 Ill. App. 3d 1133, 1144-45 (2000). As the court in *Sauseda* explained:

> "Sentencing hearings do not occur in a vacuum, and the duty to impose a fair sentence entails an explanation of the court's reasoning in the context of the offenses of which a defendant has been convicted. A fair sentence is not just the product of mechanically tallying factors in aggravation and

20

mitigation and calculating the result. Indeed, a sentencing hearing is likely the only opportunity a court has to communicate its views regarding the defendant's conduct and thus we do not agree that a trial judge's commentary on the nature and circumstances of a defendant's crimes necessarily results in improperly using elements of the offense as factors in aggravation." *Sauseda*, 2016 IL App (1st) 140134, ¶ 15.

¶ 48 Here, the record shows that R.H. was eight years old, and thus a young child. Although predatory criminal sexual assault of a child will, by definition, always involve a victim under the age of 13, the fact that R.H. was a young child was inherent in the circumstances of the defendant's crimes. Based upon our review of the record, the trial court did not specifically find that R.H.'s age was a factor in aggravation or that the defendant should receive a lengthier sentence because of R.H.'s young age. Rather, the record shows that trial court referred to R.H.'s young age because it was relevant to the nature and circumstances of the case. Thus, we do not find that the trial court improperly considered R.H.'s age as an aggravating factor resulting in a double enhancement.

¶ 49 B. The Trial Court's Consideration of Physical Harm

¶ 50 Similarly, the defendant argues that the trial court improperly considered the physical harm endured by R.H. as a factor in aggravation because no evidence of physical harm was presented at trial or sentencing beyond the harm inherent in the charge of predatory criminal sexual assault of a child. We disagree.

¶ 51 When considering whether the defendant's conduct caused or threatened serious harm, the trial court stated:

21

"I do find that the Defendant's conduct caused or threatened serious harm. I believe that—and this is what the jury has ruled—that the child was molested, and that I think these acts would—particularly of such a young child would cause emotional harm, um, or threaten emotional harm, and threaten mental harm and would also threaten physical harm. I mean, I am guessing there was. I can't imagine this without there being some physical harm, at least threatened. There was testimony to that effect from the child as well. So, the Court would make that finding."

¶ 52　This court has previously observed that many cases have held that the psychological harm inflicted upon a child victim may be considered as a proper factor in aggravation. *Bunning*, 2018 IL App (5th) 150114, ¶ 18. If the trial court may consider the psychological harm inflicted upon a child as a factor in aggravation, we see no reason why the trial court may not consider the physical harm inflicted upon a child victim as well. We note that physical harm is not an element of the offense of predatory criminal sexual assault of a child as charged in this case. See 720 ILCS 5/11-1.40(a)(1) (West 2018). Physical harm may also not be present in every case depending on the act of penetration alleged and the circumstances of the offense. Thus, we do not believe it is improper for a trial court to consider, as was done in this case, that the defendant's conduct at least threatened harm.

¶ 53　Here, the evidence presented at trial showed that the defendant's conduct at least threatened physical harm. In his CAC interview, R.H. told Parker that his body felt better when the defendant "stopped doing it." R.H. also told Parker that his body felt "not

22

happy" when the defendant was sexually abusing R.H. During his testimony, R.H. indicated that the sexual abuse made him uncomfortable. Thus, there was some basis in the record for the trial court's finding that the defendant's conduct at least threatened physical harm.

¶ 54 Even if we were to accept the defendant's argument that the trial court improperly considered the threat of physical harm, remand would not be necessary. The trial court found that the defendant's conduct threatened both psychological and physical harm. In his brief, the defendant concedes that he is not disputing the trial court's finding as to the threatened psychological harm. Reviewing the sentencing proceedings as a whole, we find that the trial court's passing reference to the threat of physical harm was *de minimis* compared to its consideration of the potential psychological harm suffered by R.H. Indeed, the record shows that the trial court was more concerned with the potential long-term effects that the defendant's conduct would have on R.H. than any threatened physical harm. As we have previously acknowledged, the defendant was sentenced well below the maximum term allowed by statute. The trial court also considered multiple factors in aggravation and mitigation before sentencing the defendant. Thus, we cannot find that the defendant's sentence would have been any different absent the trial court's finding that the defendant's conduct at least threatened physical harm.

¶ 55 C. The Trial Court's Reliance on Personal Knowledge and Beliefs

¶ 56 Finally, the defendant contends that the trial court improperly relied upon its personal knowledge and beliefs concerning the psychological impact of sexual abuse on

23

children when fashioning the defendant's sentence. The defendant challenges the following statements made by the trial court:

> "Um, I look at things like this, particularly where the child was a member of the family and being abused in this way, and, uh, I think of the effect, the long-term effect that this is likely to have on this child. I'm not a psychiatrist. I don't know but I can only imagine. Just from my life experience in having raised children, and having been around kids and seeing them grow up, I can only imagine.

> It puts me in mind of something somebody said recently when considering how a particular act can affect the future, and this is what was said. You can count how many seeds are in an apple but you can't count how many apples are in a seed. So with every one of these things that's happened to this child, who knows what the bad effects are going to be down the road. It can only—you can only guess. You can only just, um, think of it in the darkest of terms."

¶ 57　The defendant argues that the trial court relied on its experience as a parent to speculate about the long-term impact of the offense on R.H. and had personal beliefs as to what those effects would be. It is well settled that a determination made by the trial court based upon private investigation or private knowledge, untested by cross-examination or the rules of evidence, constitutes a denial of due process. *People v. Dameron*, 196 Ill. 2d 156, 171-72 (2001). A trial court's sentencing decision, however, need not be divorced from the court's own background and experience in life. See *People*

24

*v. Tye*, 141 Ill. 2d 1, 23 (1990). "Indeed, it is precisely that experience that grounds the decision in a particular case in the value system of the community." *Tye*, 141 Ill. 2d at 23. In rendering a sentence, the trial court is presumed to have relied upon only competent and reliable evidence. *People v. Griffith*, 158 Ill. 2d 476, 497 (1994). It is the defendant's burden to overcome this presumption. *Griffith*, 158 Ill. 2d at 497.

¶ 58    Here, the defendant has not overcome this presumption. The record does not show that the trial court conducted its own investigation, such as consulting outside sources. See *Dameron*, 196 Ill. 2d at 172-79 (remanding for new sentencing hearing because the record showed that the trial court considered and gave weight to a social sciences book and sentencing comments made by the judge's father, another circuit judge, regarding a murder case bearing a "substantial resemblance" to the defendant's case); *Cervantes*, 2014 IL App (3d) 120745, ¶¶ 45-47 (finding the trial court's consideration of life expectancy tables during sentencing improper when neither party introduced evidence of the life expectancy tables or asked the court to consider the defendant's life expectancy). The record does not show that the trial court possessed or employed personal knowledge regarding the specific facts of the defendant's case when imposing sentence. See *People v. Wallenberg*, 24 Ill. 2d 350, 353-54 (1962) (remanding for new trial because when rendering a guilty verdict, the trial court considered matters that were not in evidence but were based on the trial court's private knowledge).

¶ 59    Here, the defendant has not shown, and the record does not reveal, that the trial court relied on any private investigation or personal knowledge of the defendant's case. Accordingly, we do not find that the defendant was denied a fair sentencing hearing.

Rather, the trial court merely reflected on its own experience as a parent when considering the potential psychological harm that R.H. may suffer as a result of the defendant's conduct.

¶ 60    For the foregoing reasons we affirm the defendant's convictions and sentence.


¶ 61    Affirmed.