NOTICE
Decision filed 09/22/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240350-U

NO. 5-24-0350

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Clinton County. |
| | ) | |
| v. | ) | No. 23-CF-74 |
| | ) | |
| DENNIS HALEY, | ) | Honorable |
| | ) | Douglas C. Gruenke, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Justices Vaughan and Hackett[*] concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm defendant's conviction and sentence where defendant's three-year sentence was not excessive.

¶ 1    Defendant, Dennis Haley, pleaded guilty to one count of violation of an order of protection (720 ILCS 5/12-3.4(a)(1) (West 2022)), and the Clinton County circuit court sentenced him to three years in prison followed by four years of mandatory supervised release (MSR). Defendant appeals, requesting this court reduce his excessive sentence,[1] where the trial court improperly considered defendant's prior delayed sentences in aggravation, refused to consider the hardship

_____

[*]Justice Welch was originally assigned to the panel prior to his death. Justice Hackett was later substituted on the panel and has read the briefs and listened to the recording of oral argument.

[1]We note that defendant completed his term of imprisonment but has not yet completed his MSR. Since defendant remains on MSR, "a reduction in his prison sentence would affect how long he could be reincarcerated for a violation of his MSR." *People v. Montalvo*, 2016 IL App (2d) 140905, ¶ 14 (citing *People v. Jackson*, 199 Ill. 2d 286, 294 (2002)).

1

defendant's minor son, I.L. (born May 30, 2009), would experience as a result of defendant's prison sentence, and failed to properly balance the nature and seriousness of the offense. For the following reasons, we affirm.

¶ 2                                              I. Background

¶ 3    We limit our recitation to those facts relevant to our disposition of this appeal. We will recite additional facts in the analysis section as needed to address defendant's specific arguments.

¶ 4    On October 25, 2022, the State charged defendant by information with the offense of violation of an order of protection (count I) (*id.* § 12-3.4(a)(1)), a Class A misdemeanor, when defendant, on or about October 2, 2022, after having been served notice or otherwise obtained knowledge of the contents of a September 21, 2022, order of protection from St. Clair County (19-OP-211), knowingly contacted Sheri Haley, defendant's then wife and a protected party, via phone. The State also charged defendant with the offense of theft of utility services (count II) (*id.* § 16-14(a)), a Class A misdemeanor.

¶ 5    On April 3, 2023, the State amended count I of the October 25, 2022, information to include defendant's prior domestic battery conviction in St. Clair County from on or about September 13, 2003 (case No. 2003-CM-3110). The inclusion of defendant's prior  domestic battery conviction changed the offense at issue from a Class A misdemeanor to a Class 4 felony. The information indicated defendant was eligible for extended-term sentencing pursuant to section 5-5-3.2(b)(1) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-5-3.2(b)(1) (West 2022)). Count II of the information remained unchanged.

¶ 6    The State's charge for the offense of violation of an order of protection against defendant stemmed from October 2, 2022, when defendant sent Sheri text messages via phone concerning

defendant's minor son, I.L.[2] Sheri reported to police that she received text messages from an unknown number that she believed to be associated with defendant. Police subsequently seized defendant's phone and took him into custody. Defendant and Sheri had three children together; however, Sheri is not I.L.'s biological mother. Prior to the date of the offenses, Sheri filed, and the trial court granted, an emergency order of protection against defendant, prohibiting defendant from having any contact with her. Although the first emergency order of protection expired on September 21, 2022, the court continued the order of protection to October 19, 2022.

¶ 7     On September 15, 2023, defendant failed to appear at a scheduled pretrial hearing. The trial court subsequently issued a warrant for defendant's arrest.

¶ 8     On September 18, 2023, defendant, represented by counsel, entered into an open plea with the State in which defendant agreed to plead guilty to count I—violation of an order of protection—in exchange for the dismissal of count II—theft of utility services. The trial court, having determined that defendant's guilty plea was not the product of force, threat, or coercion but entered into knowingly and voluntarily, accepted defendant's plea of guilty to count I.

¶ 9     On November 29, 2023, the trial court held defendant's sentencing hearing. The State offered no witness testimony. Defendant, however, testified on his own behalf to the following. Defendant testified that, prior to his current incarceration, he participated in mental health counseling services for his diagnoses of adjustment disorder with mixed anxiety and depressed mood, acute stress disorder, and "the possibility of" post-traumatic stress disorder (PTSD).

---

[2]Defendant refers in his presentencing investigation report to the correspondence between him and Sheri as an "email," stating he sent her the following message: " 'Look, give me my f*@king kid back, quit using him as a pawn, you don't get along with him anyway, he doesn't like you, let's just be done. I'll sign the rights over on the other three kids, if that's what you want, I'm not playing games with kids, I'm not going to be partner to this game f*@king their heads up, I'll leave. But I want [I.L.] back, I want my shit on my property, and I wanna [*sic*] go. Let's be done.' " Despite this, the record consistently states that defendant sent Sheri text messages.

Defendant testified that he did not intend to contact Sheri if the court released him on probation. Defendant highlighted that he had no contact with Sheri for over a year since October 2022. Following an issue concerning domestic violence in the presence of I.L., defendant stated that he was working on getting I.L. back by attending parenting classes, weekly therapy several times a week, domestic battery classes, regularly meeting with the Illinois Department of Children and Family Services (DCFS), and complying with random drug tests. Defendant declined the court's offer to make a statement in allocution.

¶ 10     The State then submitted a certified copy of the charging document and the accompanying sentencing order for domestic battery (case No. 20-CF-957) against Sheri. The State requested the trial court sentence defendant to four years in prison followed by four years of MSR. The State argued that several factors in aggravation supported the request, including that defendant had a history of criminal activity. The State argued that defendant's presentencing investigation (PSI) report detailed a history of committing crimes of violence or threats of violence, including domestic battery against the mothers of defendant's children, violating orders of protection, harassing others through electronic communication, and weapons offenses. The State continued to argue that defendant's PSI demonstrated "concerning behavior, violence—potentially violent behavior." Next, the State argued that the requested sentence was necessary to deter others from committing the same crime, stating that "it's important that individuals *** granted orders of protection are protected by the order of protection." The State asserted that "[i]t's important for courts to uphold the legitimacy of orders of protection and put some force behind what, otherwise, if there is no force behind it, would just be a piece of paper."

¶ 11     The State further argued that several factors in mitigation did not apply, including that defendant's criminal conduct was a result of circumstances likely to recur. In support, the State

highlighted defendant's history of domestic violence and past violations of orders of protection. Lastly, the State argued that defendant's attitude and character demonstrated his likelihood of recidivism. Specifically, the State argued that defendant's PSI demonstrated that he "blames everybody but himself for the situation that he's in today," including the Trenton Police Department, the trial court, the state's attorney's office, Sheri, and DCFS. The State highlighted that defendant stated during his PSI interview that "the only people that felt any loss or lies and were affected in a negative way [in this case] was [*sic*] my son [I.L.] and lastly myself." In addition, defendant's PSI stated that defendant reported during his mental health assessment that he "has been involved in a domestic violence situation where he is the victim," and that "[i]t's the Court's fault" if he is sentenced to prison in the instant case.

¶ 12 In response, defense counsel argued that defendant accepted responsibility for his actions by pleading guilty to count I. Defense counsel pointed out that defendant stated in the PSI that the "order of protection, within days of this violation having occurred, was then vacated by the Court. It was found after a hearing, there *** was insufficient evidence present to actually issue a full order of protection in this case." Defense counsel then argued that defendant contacted Sheri "to try and either get his son back or the property and just split the property and be done with this whole situation and he didn't want anything to do with her." Defense counsel agreed that defendant "did not use very nice language but he did not, I don't believe, ever threaten her with physical harm in these incidents." Instead, defense counsel argued that defendant contacted Sheri in "an attempt by him to try and get away from [Sheri] and to get his property and his son and be done with the issues in this case." Defense counsel further argued that defendant believed Sheri abused I.L., supporting defendant's reasoning for contacting Sheri. Defense counsel then addressed another case where defendant committed domestic battery in front of I.L., stating that defendant

"[was] trying to take care of issues that the Court has ordered him to take care of to try and get his son back." Defense counsel further stated that defendant suffered from PTSD and mental health issues at the time of the incident, which caused him to lash out. As such, defense counsel requested the court sentence defendant to probation, stating the defendant "will not have any contact with [Sheri] in any way, shape, or form." Defense counsel then requested the court consider that defendant neither caused nor threatened serious physical harm when he contacted Sheri and did not contemplate that his actions would cause or threaten serious physical harm.

¶ 13 Following argument by the parties, the trial court sentenced defendant to three years in prison followed by four years of MSR. In fashioning a sentence, the court stated the following when considering defendant's extensive criminal history:

"The *** terms of his criminal history, it started in 2000 with resisting peace officers. He has multiple convictions for *** assault. Or I guess one of them was at least supervision with multiple charges and court procedures for assault. He has multiple charges of domestic battery and battery. Multiple violations of an order of protection. Harassment, electronic communication, possession of ammunition without a FOID card. Unlawful use of a weapon. *** he has an extensive criminal history, much of which, can be classified as violent history through either assault or battery."

The court also addressed defendant's traffic history, stating that, although it "do[es]n't put much weight on these in terms of aggravation," defendant had "ten traffic matters in the last two years and he's had 29 traffic matters overall." Although the court noted that the traffic violations were not violent offenses, the violations nonetheless showed that "it doesn't appear that [defendant] intends to follow the law on those either." As such, the court concluded that "a sentence of probation or conditional discharge would deprecate the seriousness of the crime committed."

6

¶ 14    In mitigation, the trial court agreed that defendant's actions against Sheri did not result in physical harm, and defendant did not present a threat of physical harm when he contacted her. Despite this, the court found, similar to the State, that the PSI showed that "defendant blames everybody in this except for himself." The court then addressed defendant, stating the following:

> "[A]lthough, you note and admit that you sent and violated the order of protection, you think that there is no harm there. Well, when a victim receives contact from a perpetrator, there is harm. Maybe not physical harm but there is emotional harm. There's anxiety that comes with that. So there is a victim when you violate an order of protection."

The court continued to state that, despite defendant's extensive criminal history, "he's had fines and costs, fines and costs, one day in jail here, some probation. That stops today." As such, the court concluded that sentencing defendant to probation or conditional discharge "would be inconsistent with the ends of justice." Thus, the court sentenced defendant to three years in prison followed by four years of MSR.

¶ 15    On December 4, 2023, defendant filed a motion to reduce sentence. Defendant also filed a motion to acquire the transcript from the November 29, 2023, sentencing hearing.

¶ 16    On February 9, 2024, defendant filed an amended motion to reconsider/reduce sentence and an Illinois Supreme Court Rule 604(d) certificate of compliance. In his motion, defendant argued his sentence was excessive and disproportionate to the nature of the offense convicted, where defendant merely "text message[d] [Sheri] about splitting up property" and "[a]t no time did [he] threaten or contemplate harm in any way with the text message." Defendant also argued that the court erred by not finding that defendant's prison sentence would negatively impact defendant's son, who would likely become a ward of the court (730 ILCS 5/5-5-3.1(a)(18) (West 2022)). Defendant noted that he "was taking care of issues that the juvenile court required him to

7

take care in the abuse and neglect case involving his son." Defendant also argued that the court erred by not finding that defendant suffered from a serious mental illness (*i.e*., adjustment disorder with mixed anxiety and depressed mood, acute stress disorder, and PTSD) (*id.* § 5-5-3.1(a)(16)). Defendant asserted that his mental health issues substantially affected his ability to understand the nature of his acts and "stop himself from violating the order of protection." Next, defendant argued that the court erred by not finding that his character and attitude, specifically that he expressed remorse and took responsibility for his actions, demonstrated he was unlikely to commit another crime (*id*. § 5-5-3.1 (a)(9)).

¶ 17 On March 6, 2024, the trial court held a hearing on defendant's motion to reconsider/reduce sentence. From the outset, defense counsel argued that the court erred by failing to make a finding that defendant's prison sentence would negatively impact defendant's son, given that DCFS had custody and guardianship of I.L., which could result in defendant's termination of parental rights. As such, defense counsel requested the court also find "number 18 that there was a parent and child whose wellbeing would be negatively affected by his parent's absence." Defense counsel then argued that defendant's mental illnesses substantially impaired his ability to understand the nature of his actions, and that defendant's open plea of guilt demonstrated his remorse for his actions, indicating he was unlikely to commit another crime. Lastly, defense counsel argued that the sentence was excessive in light of the actual offense, which consisted of "a couple of text messages to the victim *** dealing with property and some other things." For support, defense counsel argued that the court found on October 19, 2022—following defendant's violation of the order of protection—that there was insufficient evidence to order a plenary order of protection.

¶ 18 In response, the State argued that the record did not support defense counsel's statements that "because of [defendant's] mental health issues that's why he actually committed these crimes."

Next, the State argued that defendant's extensive criminal history, as well as the circumstances of the present case, indicated defendant "[wa]s very likely to commit another crime in the future." The State further argued that, although defendant pled guilty, defendant was not remorseful, asserting that defendant essentially stated that "it's not even fair that he was ever convicted of this crime" where "there was no victim." Moreover, although the offense included a "one-text communication" between defendant and Sheri, the State contended that the court's sentence was necessary, stating the following:

> "[W]hen we're talking about any kind of domestic violence circumstance, the cycle of violence doesn't—doesn't always—domestic abuse doesn't always require some overt physical act to be incredibly damaging to the psyche. The reason why we have the amount of orders of protections that we do under the domestic violence statute is because of how psychologically damaging these kinds of cases can be."

Lastly, the State argued that defendant "violated a then active court order to not have contact with somebody else." As such, the court's subsequent ruling whether to enter, continue, or deny the plenary order had no bearing on the fact that defendant violated an existing order of protection on October 2, 2022. Defense counsel subsequently clarified that he alleged defendant's mental health issues in the defendant's posttrial motion.

¶ 19    Following argument by the parties, the trial court denied defendant's motion to reconsider/reduce sentence. The court first stated its belief that it did not "think that [subparagraph 18 of the Unified Code] means that every time a person has a child that factor should be considered" in mitigation. The court continued to state that the evidence presented at defendant's sentencing hearing demonstrated that defendant "was not providing any type of housing or anything like that that would affect the wellbeing of the child. Just because he's in DOC doesn't

9

mean he's going to lose his parental rights." As such, the court found that subparagraph 18 of the Unified Code did not apply. Next, the court rejected defendant's argument that his alleged mental illnesses "affect[ed] his decision[-]making ability or affect[ed] his culpability." The court described defendant's attitude in court "as anything but remorseful. Just his plea itself does not show remorse. That was further supported by his statements in the PSI." Lastly, the court stated that defendant's sentence was well within the sentencing range for a Class 4 felony, and "[j]ust because [the order of protection] was not granted at the plenary, he was still subject to the emergency one" in effect on October 2, 2022. The court continued to state: "He knew he was subject to the emergency one and knowingly and willfully violated it." Defendant filed a timely notice of appeal.

¶ 20                                    II. Analysis

¶ 21     Defendant argues on appeal that this court should reduce his excessive sentence. Defendant argues that the trial court improperly focused on defendant's prior delayed sentences in aggravation to impose a lengthier sentence in the present case. Next, defendant asserts that the court abused its discretion by refusing to consider, despite compelling and uncontradicted evidence, the hardship defendant's minor son would experience in DCFS custody as a result of defendant's prison sentence. Moreover, defendant argues that the court failed to properly balance the nature and seriousness of defendant's actions before imposing sentence. We disagree with defendant.

¶ 22     The trial court has broad discretionary powers in imposing a sentence. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). The trial court "has the opportunity to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *Id.* (citing *People v. Streit*, 142 Ill. 2d 13, 19 (1991); *People v. Perruquet*, 68 Ill. 2d 149, 154 (1977)). A court is also required to consider statutory factors in mitigation and aggravation,

although the court "need not recite and assign a value to each factor it has considered." *People v. McGuire*, 2017 IL App (4th) 150695, ¶ 38. A sentencing court may not refuse to consider relevant evidence presented in mitigation, but it may determine the weight to give such evidence. *People v. Markiewicz*, 246 Ill. App. 3d 31, 55 (1993). "[I]t is presumed that the trial court considered the evidence in mitigation absent any contrary indication in the record." *People v. Anderson*, 325 Ill. App. 3d 624, 637 (2001).

¶ 23    Where, as here, an imposed "sentence falls within the statutory limits, it will not be overturned on appeal absent an abuse of discretion." *People v. Bunning*, 2018 IL App (5th) 150114, ¶ 16. "An abuse of discretion occurs only if a sentence greatly varies from the spirit and purpose of the law or where it is manifestly disproportionate to the nature of the offense." *Id.* A reviewing court gives great deference to the trial court's judgment regarding sentencing because the trial judge, having observed the defendant and proceedings, is generally in a better position to determine the appropriate sentence than the reviewing court, which "must rely on the 'cold' record." *People v. Fern*, 189 Ill. 2d 48, 53 (1999). Accordingly, this court "must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently." *Id.* (citing *Streit*, 142 Ill. 2d at 19).

¶ 24    Defendant first argues that his sentence was excessive because the trial court improperly focused on defendant's prior delayed sentences to impose a lengthier sentence in the present case. Here, defendant was convicted of violating an order of protection, a Class 4 felony, with an extended sentencing range of three to six years' imprisonment (730 ILCS 5/5-5-3.2(b)(1) (West 2022)). Thus, the court sentenced defendant to the mandatory minimum sentence. Defendant argues that the trial court improperly suggested that defendant "should have suffered a lengthier sentence for those past offenses" when it "implicitly consider[ed] the low sentencing on previous

11

convictions when determining the sentence in this case without any knowledge of the facts of those cases." We disagree.

¶ 25    The trial court, relying on the PSI, stated the following before imposing sentence:

"I mentioned a lot of the criminal history already but when I go back through it starting in 2000, he has a delayed sentencing. He was ordered to complete community service. When he came back, there was an amended sentence. The balance of community service was waived. That was in St. Cla[ir] County so that one wasn't fulfilled. Then for an assault charge, he got guilty, one day jail, credit time served. Another assault charge [with] supervision, fines and costs. Domestic battery, fines and costs. Battery, fines and costs. Violation of an order of protection, fines and costs. Harassment by electronic communication device, six months['] supervision, one day in the jail with credit for time served, fines and costs. Possession of ammunition, there was just a conviction entered, nothing else. And theft from a person and domestic battery subsequent to St. Cla[ir] County, was admitted to probation. That was revoked several times. There were several amended petitions to revoke. That was ultimately terminated unsuccessfully. Then he was placed on consecutive probation again for unlawful use of a weapon and domestic battery subsequent. So, throughout his entire time, he's had fines and costs, fines and costs, one day jail here, some probation. That stops today."

The record indicates that the court was troubled by defendant's extensive criminal history and his pattern of reoffending since 2000, which led the court to conclude that defendant was not a candidate for probation or conditional discharge. By detailing defendant's criminal history, the court noted that previous judges, in almost every case, sentenced defendant to probation, imposed fines and costs, or supervision. Despite this, defendant reoffended and petitions to revoke followed.

12

Based on the foregoing, the court appropriately concluded that prior lenient treatment measures failed to deter defendant from committing crimes—many of which included violent crimes—and did not lead to his rehabilitation. We, thus, reject defendant's argument that the trial court relied on an improper aggravating factor at sentencing. Accordingly, we cannot conclude that the trial court abused its discretion.

¶ 26    Next, defendant argues that the trial court refused to consider, despite compelling and uncontradicted evidence, the hardship defendant's minor son, I.L., would experience as a result of defendant's prison sentence. The question of whether the trial court properly found no mitigating value in a statutory mitigating sentencing factor is reviewed for an abuse of discretion. *People v. Prather*, 2022 IL App (4th) 210609, ¶ 40. While we rely on the "cold" record, the court below is in a better position to consider factors such as defendant's credibility, demeanor, and mentality by observing defendant and the proceedings. *Fern*, 189 Ill. 2d at 53.

¶ 27    In his motion to reconsider/reduce sentence, defendant claimed that the trial court erred by not finding that defendant's prison sentence would negatively impact defendant's son. Defendant cited section 5-5-3.1(a)(18) of the Unified Code (730 ILCS 5/5-5-3.1(a)(18) (West 2022)), which provides that the following constitutes mitigating circumstances:

"The defendant is *** the parent of a child or infant whose well-being will be negatively affected by the parent's absence. Circumstances to be considered in assessing this factor in mitigation include:

(A) that the parent is breastfeeding the child;

(B) the age of the child, with strong consideration given to avoid disruption of the caregiving of an infant, pre-school or school-age child by a parent;

(C) the role of the parent in the day-to-day educational and medical needs of the child;

13

(D) the relationship of the parent and the child;

(E) any special medical, educational, or psychological needs of the child;

(F) the role of the parent in the financial support of the child;

(G) the likelihood that the child will be adjudged a dependent minor under Section 2-4 and declared a ward of the court under Section 2-22 of the Juvenile Court Act of 1987;

(H) the best interest of the child.

Under this section, the defendant shall have the right to present a Family Impact Statement at sentencing, which the court shall consider in favor of withholding or minimizing a sentence of imprisonment prior to imposing any sentence and may include testimony from family and community members, written statements, video, and documentation. Unless the court finds the parent poses a significant risk to the community that outweighs the risk of harm from the parent's removal from the family, the court shall impose a sentence in accordance with subsection (b) that allows the parent to continue to care of the child or the children."

¶ 28 Subsection (b) provides:

"(b) If the court, having due regard for the character of the offender, the nature and circumstances of the offense and the public interest finds that a sentence of imprisonment is the most appropriate disposition of the offender, or where other provisions of this Code mandate the imprisonment of the offender, the grounds listed in paragraph (a) of this subsection shall be considered as factors in mitigation of the term imposed." (*id.* § 5/5-5-3.1(b)).

¶ 29 It is undisputed that 15-year-old I.L. was placed in the care and custody of DCFS following defendant's incarceration. According to defendant's PSI, he had sole custody of I.L. since I.L. was

six months old. Defendant raised I.L. by himself for approximately seven years until 2016 when defendant met Sheri. Although the specifics are not contained in the record on appeal, defendant's motion to reconsider/reduce sentence referenced an "abuse and neglect case involving his son," and the report of proceedings indicated that a juvenile court found that defendant "committed domestic violence while his son was present." Accordingly, defendant's violent behavior placed I.L. in a situation that led to the involvement of DCFS, resulting in defendant having no contact with I.L. As a result, defendant testified that, because of the involvement of DCFS, he attended weekly parenting classes, weekly domestic battery classes, regularly met with DCFS, completed random drug testing, and attended therapy "more than" once a week "to get [his] child back." However, the PSI contradicted defendant's testimony concerning therapy, stating that Hoyleton Youth and Family Services conducted a mental health assessment of defendant in April or May 2023, recommending weekly, one-hour therapy. The PSI indicated there was no information that defendant started therapy. According to Alternatives Counseling, defendant completed an intake assessment in April 2023 and a recommendation followed for him to complete 26 weeks of treatment. However, Alternatives Counseling discharged defendant for "excessive absences" in August 2023.

¶ 30　Moreover, we note that defendant indicated in his PSI that he was "actively involved" in I.L.'s life; however, he failed to elaborate upon the nature and extent of the role that he had in I.L.'s day-to-day caregiving duties (*id*. § 5-5-3.1(a)(18)(C)) or whether he contributed toward I.L.'s financial support (*id*. § 5-5-3.1(a)(18)(F)). Defendant presented no evidence that he provided all daily needs to I.L. or financially supported his son and family. He stated that he supported his family through self-employment jobs, such as carpentry and landscaping, but provided no corroborating evidence to support this assertion. Instead, his verified employment history showed

15

that he repaired trailers for four months following the State's charges in the instant case, and that he had a history of working at jobs for a year or less before failing to show up to work.[3] The PSI showed that defendant, himself, stated he was " 'broke as a joke' because of his legal situations," owed $5,000 in child support payment arrearages, which resulted in the suspension of his Illinois drivers' license, and also had outstanding legal fees and fines for past criminal offenses in excess of $2,000. Moreover, defendant lived in an unstable living environment in a high-crime neighborhood in Fairview Heights, Illinois. Defendant did not present a family impact statement or corroborating evidence in favor of this factor in mitigation. Thus, the record does not support defendant's assertion that the court failed to consider this factor in mitigation, where defendant offered little potential for mitigation. Instead, defendant essentially asks this court to reweigh the evidence, which we cannot do. Accordingly, we cannot conclude that the trial court abused its discretion by finding this mitigation factor inapplicable.

¶ 31 Lastly, defendant argues that the trial court failed to properly balance the nature and seriousness of defendant's actions of sending non-threatening text messages about his son. As such, defendant asserts that defendant's sentence was disproportionate to the nature and seriousness of the offense and the mitigation presented, and thus, requests this court reduce his sentence. We cannot agree with defendant.

¶ 32 The Illinois Constitution requires a trial court to impose a sentence that achieves a balance between the seriousness of the offense and the defendant's rehabilitation potential. Ill. Const. 1970, art. I, § 11. To find the proper balance, the trial court must consider a number of aggravating and mitigating factors including: "the nature and circumstances of the crime, the defendant's conduct in the commission of the crime, and the defendant's personal history, including his age, demeanor,

_____

[3]Although defendant indicated in his PSI that he worked at companies for longer than a year, those periods of employment could not be verified.

habits, mentality, credibility, criminal history, general moral character, social environment, and education." *People v. Maldonado*, 240 Ill. App. 3d 470, 485-86 (1992). Although a defendant's rehabilitation potential must be considered that factor " 'is not entitled to greater weight than the seriousness of the offense.' " *People v. Alexander*, 239 Ill. 2d 205, 214 (2010), quoting *People v. Coleman*, 166 Ill. 2d 247, 261 (1995). Moreover, because a trial court need not explicitly analyze each relevant factor or articulate the basis for the sentence imposed, when mitigating evidence is presented before the trial court, it is presumed the court considered that evidence in imposing the defendant's sentence. *People v. Averett*, 381 Ill. App. 3d 1001, 1021 (2008).

¶ 33    Ultimately, because the trial court is in the best position to weigh these factors, the sentence that the trial court imposes is entitled to great deference and will not be reversed absent an abuse of discretion. *People v. Stacey*, 193 Ill. 2d at 209. As such, a reviewing court will not reweigh the factors in reviewing a defendant's sentence and may not substitute its judgment for the trial court merely because it could or would have weighed the factors differently. *People v. Jones*, 376 Ill. App. 3d 372, 394 (2007). As stated above, where, as here, an imposed "sentence falls within the statutory limits, it will not be overturned on appeal absent an abuse of discretion." *Bunning*, 2018 IL App (5th) 150114, ¶ 16. However, "a sentence within statutory limits will be deemed excessive and the result of an abuse of discretion by the trial court where the sentence is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *Stacey*, 193 Ill. 2d at 210 (citing *Fern*, 189 Ill. 2d at 54).

¶ 34    On appeal, defendant attempts to minimize his behavior by arguing that he sent non-threatening text messages on a single day that were not incessant or harassing. However, the evidence presented at the sentencing hearing demonstrated that defendant's actions in the present case were part of a pattern of lawlessness, as evidenced by his extensive criminal history, that

17

included many violent offenses, such as battery, assault, and domestic battery. In addition, defendant had a prior offense for violating an order of protection in 2006. Consistent with the trial court, we find this evidence significant as it speaks to defendant's character, rehabilitative potential, and the issue of deterrence, as detailed above. Although defendant is correct that he did not inflict physical injury or make threats to physically injure Sheri in the instant case, we do not believe this negates the fact that defendant's criminal history simply does not show that he has demonstrated rehabilitative potential. Furthermore, our conclusion is supported by the fact that, similar to the trial court, we find defendant's testimony and PSI troubling, where he made multiple statements demonstrating his lack of accountability for his actions, going as far as referring to himself as the victim in this case and blaming those involved, including the trial court, the state's attorney's office, the police, Sheri, and DCFS. As such, we cannot conclude that the court's sentence of three years was greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense.

¶ 35     Accordingly, we cannot conclude that the trial court abused its discretion by sentencing defendant to three years for the offense of violation of an order or protection followed by four years of MSR.

¶ 36                                   III. Conclusion

¶ 37     For the reasons stated, we affirm the judgment and sentence of the Clinton County circuit court.

¶ 38     Affirmed.