NOTICE
Decision filed 05/17/18. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2018 IL App (5th) 150114

NO. 5-15-0114

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Christian County. |
| | ) | |
| v. | ) | No. 13-CF-59 |
| | ) | |
| JERRY H. BUNNING, | ) | Honorable |
| | ) | Bradley T. Paisley, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion.
Justices Moore and Overstreet concurred in the judgment and opinion.

**OPINION**

¶ 1     After a jury trial in the circuit court of Christian County, defendant, Jerry H. Bunning, was convicted of aggravated criminal sexual abuse (720 ILCS 5/11-1.60(c)(1)(i) (West 2012)) and was sentenced to five years in the Department of Corrections to be followed by two years of mandatory supervised release. Defendant appeals the denial of his motion to reconsider his sentence. The issue raised in this direct appeal is whether the trial court erred by considering in aggravation the psychological harm or threat thereof suffered by the minor victim in sentencing defendant. We affirm.

¶ 2                                    FACTS

¶ 3     Defendant was charged by information with a single count of aggravated criminal sexual abuse for having the victim, M.B., who was under 13 years of age, "touch his penis over his

1

clothing." *Id.* M.B. is defendant's step-granddaughter. At trial, M.B., age nine, testified that approximately two years earlier defendant showed her pornography on a computer and made her touch him on "his bad spot" over his clothes. She pointed to the bad spot on a diagram. M.B. said it happened in the computer room at her grandparents' house. M.B. estimated that it happened approximately four times, usually at night while her grandmother was asleep.

¶ 4 After hearing all the evidence, the jury found defendant guilty. The trial court ordered a sex offender evaluation and presentence investigation (PSI) prior to sentencing. The sex offender evaluation showed that defendant is at a low risk for recidivism. The evaluator recommended defendant undergo "[s]ex offender-specific treatment utilizing group-centered, cognitive-behavioral techniques as recommended by the Illinois Sex Offender Management Board" and "[s]ex offender-specific guidelines/requirements and specialized monitoring if [defendant] is at some point placed/released under community supervision via probation or parole."

¶ 5 The presentence investigation showed defendant has one 1977 conviction for disorderly conduct. It also showed that defendant was gainfully employed as a truck driver by the same employer for 18 years. With regard to a proposed plan of supervision, the report concluded:

> "Due to the severity of the current offense and the defendant's failure to take full responsibility for the offense, it appears the defendant lacks empathy for others. In addition, the defendant lacks involvement in an organized group or activity. If the court were to sentence the defendant to a term of probation, the targeted interventions and supervision strategies listed above as well as maximum level of supervision, would be priorities in a supervision case plan."

A revised level of service inventory suggested that defendant receive a "medium level of supervision/service" and placed defendant's probability of recidivism at 23%.

¶ 6    M.B.'s mother submitted a victim impact statement in which she set forth the ways in which she, M.B., and her family had been impacted by defendant's abuse of M.B. In her letter, she discussed how, over the course of the previous two years, her family members' lives have "been turned upside down." She explained how the family has "had to rearrange our lives to keep all of the counseling appointments, court dates, and advocate meetings." She said she and her husband missed more than 30 days of work because of such appointments, causing them to lose money because neither has a job that gives them paid time off for such matters. She also noted that the victim "has had to miss many days of school and some fun activities with her friends." She believes M.B. "is not the same girl she used to be" and defendant "took her childhood away."

¶ 7    A sentencing hearing was conducted on July 31, 2014. The State did not offer any additional evidence in aggravation. The defense called defendant's wife and defendant to testify. Both testified about the hardships it would cause their family if defendant were incarcerated.

¶ 8    In sentencing defendant, the trial court said it considered the PSI; the history, character, and attitude of the defendant; and the evidence and arguments that were presented by the parties. The court noted mitigating factors, including no prior history of delinquency, albeit one conviction years earlier, the sex offender report which indicated a low risk of recidivism, and the excessive hardship on defendant's dependents which would be caused by defendant's incarceration. The trial court also pointed out that even though defendant indicated in the PSI and in court that he was willing to comply with sex offender treatment, such treatment is not usually successful unless a defendant is willing to admit guilt.

¶ 9 As to factors in aggravation, the trial court noted that one of the factors to be considered is whether the offense caused or threatened serious harm. The court noted that this does not mean only physical harm, specifically stating as follows:

"[I]n cases like this, physical harm is often not the issue. The issue is, emotional psychological harm that may, obviously has occurred at least in some respects because the child has apparently been in treatment for some time. I think the evidence I heard in this case in a pretrial hearing was that she was. I think that is one of the first things that was done even before the police were involved is that the mother took her to some type of counseling. Uh, and unfortunately for us, we're not going to know the nature and extent of the harm caused by this act, these acts probably for quite some time. There is a real danger that [M.B.] is going to have a lot of issues in the future dealing with trust, dealing with relationships with other men, whether it is, you know, paramours or otherwise. Uh, it is just part of what happens in these kinds of unfortunate situations."

The trial court further found in aggravation that defendant held a position of supervision and trust with regard to M.B. by virtue of the fact that he was the only grandfather she ever knew.

¶ 10 The trial court pointed out that the abuse happened more than once and was well orchestrated by defendant in that defendant waited until his wife was asleep before abusing M.B. The trial court also pointed out that even though defendant denied committing any acts of abuse, he was caught in repeated lies about the incidents:

"And what I have seen in the past with sexual offenders is what I have seen with [defendant]. And that is, it starts out like this. This is what happened in this case. They find, they accuse him of having pornography on the computer. He says, no, I don't; no, I didn't, I didn't have. He didn't know anything about computers. His wife found the porn

4

on the computer relatively quickly. I don't know how it got there. I didn't put it there. Lie number two. Uh, well we don't believe that. There has got to be a way that that got there. Well, maybe I accidentally got it there. And then it was, okay, fine; and then give up just a little bit more every time, but falling short of actually coming clean and admitting what he did. Then he would say, well, okay, yeah, I was watching pornography and I didn't know [M.B.] was there. When I found out that she was there, I told her that this is what adults do, it wasn't appropriate for her, and I shut it down. Uh, of course, we don't want to tell anybody though, which is another hallmark of sexual—We can't tell anybody because, I think the words were, grandma would kill me. And then it is, well, the accusation is that she touched your penis. Well, that didn't happen. Well, wait, let me think about that. Well, there was this time that I got out of the shower, and she came running into the bathroom and smacked me in the penis; and I told her, you know, that is not appropriate, don't do that. But again, I won't tell, if you won't tell. Concealment. So it is just give you just enough each time, but the lies just compound and compound. And so if you are asking what differentiates a probationable case from a nonprobationable case, I think these facts and circumstances certainly do."

The trial court went on to state that probation would not only "deprecate the seriousness of this particular crime" but also "would be inconsistent with the ends of justice." The trial court then sentenced defendant to five years in prison to be followed by two years of mandatory supervised release.

¶ 11    Defendant filed a *pro se* motion to reduce sentence, arguing that the State failed to present any evidence of physical or emotional harm to M.B. Appointed counsel later filed an amended petition to reduce sentence in which he incorporated the allegations in defendant's

*pro se* motion "by reference" and added some additional arguments. The motion to reduce sentence alleged that the trial court failed to give proper weight to the factors in mitigation, failed to give appropriate weight to defendant's sex offender evaluation, and gave improper weight to the seriousness of harm to the victim when there was "no indication in the record from counselors or otherwise that there was serious harm done to the victim."

¶ 12    After a hearing, the trial court denied the motion to reduce sentence. The trial court said it considered both the factors in aggravation and in mitigation in sentencing defendant and noted that one of the factors it considered in aggravation was whether there was actual or threatened serious harm. The trial court found that any time a child is sexually abused by someone that is close to them, "there is a possibility that could threaten serious harm." The trial court believed there was harm to M.B. "because she was in treatment for it. There was no question about that." The trial court also pointed to the factors in aggravation in this case, which include (1) defendant's position of trust relative to the victim, (2) lack of remorse on the part of defendant, and (3) multiplicity of incidents of abuse. The trial judge said nothing new had been presented that would cause him to change his mind and reduce defendant's sentence. Defendant now appeals.

¶ 13                                ANALYSIS

¶ 14    The issue raised in this appeal is whether the trial court erred by considering in aggravation the psychological harm or threat thereof suffered by M.B. in sentencing defendant. Defendant argues that the trial court improperly considered in aggravation that defendant's conduct caused or threatened serious psychological harm because the record fails to show either evidence of actual harm caused or circumstances that would be expected to cause harm beyond that inherent in the charge of aggravated criminal sexual abuse. The State replies that the trial

6

court did not rely on an improper sentencing factor because the record sufficiently demonstrates that M.B. suffered psychological harm or, at the very least, the threat thereof, as a result of defendant's abuse. We agree with the State.

¶ 15    We are aware of the general rule that a factor inherent in the offense for which a defendant has been convicted cannot also be used as an aggravating factor in determining his sentence. *People v. Phelps*, 211 Ill. 2d 1, 11 (2004). The rationale for this prohibition against "double enhancement" is premised on the assumption that our General Assembly considered the factors inherent in the offense in designating the range of punishment. *Id.* at 12. However, the rule that a court may not consider a factor inherent in the offense should not be applied rigidly because sound public policy demands that a sentence be varied according to the circumstances of the offense. *People v. Spicer*, 379 Ill. App. 3d 441, 468 (2007). In determining whether the trial court based its sentence on proper aggravating and mitigating factors, a reviewing court should consider the record as a whole rather than focusing on a few words or statements by the trial court. *People v. Dowding*, 388 Ill. App. 3d 936, 943 (2009).

¶ 16    If a sentence falls within the statutory limits, it will not be overturned on appeal absent an abuse of discretion. *People v. Perruquet*, 68 Ill. 2d 149, 153 (1977); *People v. Stroup*, 397 Ill. App. 3d 271, 274 (2010). An abuse of discretion occurs only if a sentence greatly varies from the spirit and purpose of the law or where it is manifestly disproportionate to the nature of the offense. *People v. Stacey*, 193 Ill. 2d 203, 210 (2000). A trial court is granted deference because it is generally in a superior position to weigh such factors as defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. *People v. Streit*, 142 Ill. 2d 13, 19 (1991).

¶ 17    We first note that defendant's conviction for aggravated criminal sexual abuse is a Class 2 felony. See 720 ILCS 5/11-1.60(g) (West 2012). A Class 2 felony carries a statutory limit of not less than three years and not more than seven years. See 730 ILCS 5/5-4.5-35(a) (West 2012). Consequently, the sentence imposed upon defendant by the trial court was within the statutory limits.

¶ 18    Contrary to defendant's argument, many cases have held that the psychological harm inflicted upon a child victim of a sex crime is a proper factor to consider in aggravation. For example, in *People v. Kerwin*, 241 Ill. App. 3d 632, 636 (1993), this court rejected the defendant's argument that harm is inherent in the offense of aggravated criminal sexual assault and found it proper that the trial court considered the emotional harm to the nine-year-old victim as an aggravating factor. In *People v. Fisher*, 135 Ill. App. 3d 502, 506 (1985), our colleagues in the Third District specifically stated, "Proof of medically diagnosed psychological harm is unnecessary." In that case, the defendant, who was charged with *inter alia* two counts of indecent liberties with a child, argued that psychological harm could not be considered where it was not proven. The court rejected that argument, finding that the defendant's acts "created a strong probability of permanent psychological harm" and was therefore properly considered. *Id.*

¶ 19    In *People v. Huddleston*, 212 Ill. 2d 107, 134 (2004), our supreme court reviewed "[t]he vulnerability of children to sexual predation" and "the psychological damage that results to the developing psyches of these young victims." The court found that long-term follow-up studies of child sexual abuse victims show the sexual abuse is "grossly intrusive" in their lives "and is harmful to their normal psychological, emotional and sexual development." (Internal quotation marks omitted.) *Id.* at 135 (quoting Yale Glazer, *Child Rapists Beware! The Death Penalty and*

8

*Louisiana's Amended Aggravated Rape Statute*, 25 Am. J. Crim. L. 79, 87 (1997), quoting Christopher Bagley & Kathleen King, Child Sexual Abuse: The Search for Healing 2 (1990)).

¶ 20   Nevertheless, defendant contends that without specific evidence to show that a child victim suffered psychological harm, any psychological harm must be limited to that implicit in the offense itself. In support of its argument, defendant relies on *People v. Calva*, 256 Ill. App. 3d 865 (1993). In *Calva*, the defendant pled guilty to six counts of aggravated criminal sexual assault committed against A.G., a six-year-old girl. *Id.* at 867. At sentencing, the trial court told the defendant his actions "psychologically injured and scarred A.G. for life." *Id.* at 869. On appeal, the court found it was improper for the trial court to consider any psychological harm to A.G. because "no evidence was offered to show any psychological harm to A.G." *Id.* at 875.

¶ 21   *Calva* is distinguishable from the instant case for at least three reasons. First, in *Calva* the defendant pled guilty, whereas this case went to trial. The trial court was able to observe M.B. firsthand as she testified. M.B. specifically testified that she was abused by defendant on four different occasions. Second, unlike *Calva*, the trial court set forth, both at sentencing and in denying defendant's motion to reconsider sentence, that there was evidence of M.B. having been "in treatment." Third, M.B.'s mother submitted a victim impact statement in which she outlined the upheaval caused by defendant's abuse and specifically referred to "counseling appointments." She noted that "[e]ven with the tools the counselors" have given M.B., she is still concerned M.B. will be a victim again. She concluded that M.B. "is not the same girl she used to be."

¶ 22   After careful consideration, we find the record before us supports a finding of psychological harm to M.B. or at least a reasonable inference that M.B. suffered psychological harm. Therefore, the trial court did not err in considering psychological harm as an aggravating

factor. The record also shows that the trial court properly considered the factors in aggravation and mitigation.

¶ 23    In addition to psychological harm to M.B., the trial court found other factors in aggravation. The trial court specifically found in aggravation: (1) the position of supervision and trust defendant held over M.B., (2) the fact the abuse happened more than once, (3) defendant's concealment of the abuse, and (4) defendant's refusal to take full responsibility for the repeated acts of abuse. And, as previously set forth, the trial court's sentence falls within the statutory limits prescribed by the legislature. Under these circumstances, we cannot say the trial court erred in sentencing defendant.

¶ 24                                  CONCLUSION

¶ 25    For the foregoing reasons, we affirm the judgment of the circuit court of Christian County.


¶ 26    Affirmed.

2018 IL App (5th) 150114

NO. 5-15-0114

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Christian County. |
| | ) | |
| v. | ) | No. 13-CF-59 |
| | ) | |
| JERRY H. BUNNING, | ) | Honorable |
| | ) | Bradley T. Paisley, |
| Defendant-Appellant. | ) | Judge, presiding. |

**Opinion Filed:** May 17, 2018

**Justices:** Honorable Richard J. Goldenhersh, J.

Honorable James R. Moore, J., and
Honorable David K. Overstreet, J.,
Concur

**Attorneys for Appellant**

Michael J. Pelletier, State Appellate Defender, Ellen J. Curry, Deputy Defender, Elizabeth M. Crotty, Assistant Appellate Defender, Office of the State Appellate Defender, Fifth Judicial District, 909 Water Tower Circle, Mt. Vernon, IL 62864

**Attorneys for Appellee**

Hon. Michael M. Havera, State's Attorney, Christian County Courthouse, 101 S. Main Street, Taylorville, IL 62568; Patrick Delfino, Director, David J. Robinson, Deputy Director, Erin Wilson Laegeler, Staff Attorney, Office of the State's Attorneys Appellate Prosecutor, Fourth Judicial District, 725 South Second Street, Springfield, IL 62704