NOTICE

Decision filed 10/22/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240913-U

NO. 5-24-0913

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Lawrence County. |
| v. | ) ) | No. 22-CF-97 |
| KELLY NEWLIN, | ) ) | Honorable Christopher L. Weber, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HACKETT delivered the judgment of the court.
Justices Barberis and Sholar concurred in the judgment.

**ORDER**

¶ 1   *Held*: Where the State proved by a preponderance of the evidence that the defendant had violated the conditions of probation, and the circuit court did not abuse its discretion in resentencing the defendant to imprisonment, and where no issue of arguable merit would permit this court to disturb the circuit court's judgment, or the underlying judgment, this court grants appellate counsel leave to withdraw and affirms the judgment of the circuit court.

¶ 2   The defendant, Kelly Newlin, appeals from the circuit court's judgment that revoked his probation for aggravated battery on a public way and resentenced him to imprisonment for four years. His appointed attorney on appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks arguable merit. On that basis, OSAD has filed with this court a motion to withdraw as counsel, along with a brief in support thereof. See *Anders v. California*, 386 U.S. 738 (1967). OSAD provided the defendant with a copy of its *Anders* motion and brief. This

1

court provided the defendant with ample opportunity to file a *pro se* brief, memorandum, or other document explaining why OSAD should not be allowed to withdraw or why this appeal has substantial merit. Still, the defendant has not taken advantage of that opportunity. This court has examined OSAD's *Anders* motion and brief, as well as the entire record on appeal, and has concluded that the instant appeal does indeed lack merit. This court grants OSAD's *Anders* motion to withdraw as counsel and affirms the circuit court's judgment.

¶ 3                                                    I. BACKGROUND

¶ 4      On July 22, 2022, the defendant was charged by information with aggravated battery on a public way, a Class 3 felony. See 720 ILCS 5/12-3.05(c), (h) (West 2020). He was accused of knowingly making physical contact of an insulting nature with Stacie L. Guite on June 29, 2022.

¶ 5      On July 27, 2022, the State, the defendant, and the defendant's appointed counsel appeared before the circuit court. Counsel announced the terms of a plea agreement, as follows: the defendant would plead guilty to the aggravated battery charge; he would be released on his own recognizance, with certain specified conditions; the cause would be set for status in approximately 60 days; if the defendant has not violated the conditions of his release in this cause and has not violated any of the conditions of probation in any other cause, the State would recommend probation in the instant cause. The State agreed with counsel's recitation of the plea agreement. The defendant indicated that he understood the agreement and had no questions about it. In substantial compliance with Illinois Supreme Court Rule 402(a) (eff. July 1, 2012), the court admonished the defendant. The defendant signed a written plea of guilty and waiver of jury trial, which he had read and understood. The State provided a factual basis for the plea. The circuit court accepted the defendant's plea as knowing and voluntary, and the court released the defendant on

2

a recognizance bond, subject to certain conditions. The court scheduled a status hearing for August 28, 2022, but it was continued until November 9, 2022.

¶ 6    On November 9, 2022, the circuit court called an agreed sentencing hearing, both in the instant case and in Lawrence County case No. 21-CF-85. In case No. 21-CF-85, the defendant had pleaded guilty to domestic battery, a Class 4 felony, against the same victim as in the instant case. Case No. 21-CF-85 is the subject of an appeal in appellate case No. 5-24-0912. In accordance with the parties' agreement, the court sentenced the defendant in the instant case to probation for a period of 24 months. Conditions of probation included, *inter alia*, that he submit to drug testing as directed by a probation officer, that he not violate any criminal statutes, that he not have in his body any illicit drug prohibited by the Illinois Controlled Substances Act (720 ILCS 570/100 *et seq.* (West 2020)), and that he not attempt to falsify or adulterate any breath, urine, or blood sample. As for case No. 21-CF-85, the circuit court also sentenced the defendant to probation for 24 months, with non-financial conditions that were essentially the same as in the instant case. The court admonished the defendant of his appeal rights, in substantial compliance with Illinois Supreme Court Rule 605(c) (eff. Oct. 1, 2001).

¶ 7    On March 21, 2024, the State filed, in both the instant case and case No. 21-CF-85, a "petition charging violation of conditions of probation." On May 31, 2024, the State filed an amended petition in both cases. The amended petition alleged that the defendant had (1) committed the offense of unlawful defrauding of a drug screening test on March 8, 2024, (2) "defrauded his drug screen" on March 8, 2024, (3) tested positive for cocaine on February 9, 2024, (4) committed the offense of theft under $500 on May 19, 2024, (5) tested positive for amphetamine or methamphetamine on May 8, 2024, and (6) tested positive for THC and amphetamines on April 24, 2024.

3

¶ 8     On June 6, 2024, the circuit court called a hearing on the State's amended petition, both in the instant case and in case No. 21-CF-85. Counsel appointed by the court represented the defendant. The State indicated that it would proceed on all the allegations in the amended petition except for the fourth allegation, which concerned the offense of theft under $500. The State called two witnesses, Amber Griffin and Nicholas Peters.

¶ 9     Amber Griffin, a Lawrence County probation officer who was assigned to supervise the defendant's probation, testified about three drug screens that she had performed on the defendant. The first of these drug screens was conducted on February 9, 2024, and it resulted in "a lab confirmation for cocaine." Griffin identified State's Exhibit 1 as "a lab-confirmed drug screen for cocaine" from the sample collected on February 9, 2024. The second drug screen was performed on April 24, 2024, and the result was "positive for amphetamines and THC." Griffin identified State's Exhibit 2 as a true and accurate copy of the drug-test result from April 24, 2024. The third drug screen was performed on May 8, 2024, and the result was "a lab-confirmed positive for amphetamines and methamphetamine." She identified State's Exhibit 3 as a true and accurate copy of the drug-test result from May 8, 2024. Subsequently, the court admitted State's Exhibits 1 through 3 into evidence, without objection from the defendant.

¶ 10    Griffin also testified about the events of March 8, 2024. She met with the defendant at the probation office and instructed him to take a drug test. She arranged with Nick Peters, a deputy of the Lawrence County sheriff, to assist with collecting a urine sample. Afterward, Griffin spoke with the defendant and Deputy Peters. Griffin then watched a video that showed the defendant as he "poured some type of liquid into his drug screen cup." At that point, Griffin "confronted" the defendant about the video's contents, and the defendant replied that "it was his own urine." Griffin "asked him where the cup was at, and then he pulled out a full, small bottle that had a lid on it with

4

liquid that appeared to be urine." Griffin instructed the defendant to submit another urine sample, but the defendant did not. The defendant was arrested.

¶ 11    Nicholas Peters testified that on March 8, 2024, while working as a deputy sheriff in charge of court security, he escorted the defendant from the probation office to a restroom, where the defendant was to provide a urine sample for a drug test. As "policy" required, Peters walked behind the defendant as they headed to the restroom. During that time, Peters saw the defendant "moving his arms" but could not see exactly what he was doing. "[W]hen we got into the restroom," Peters said, "he walked up to the urinal, immediately put the cap on to the cup and then handed me the cup." Peters was suspicious; he thought that the cup could not be filled so quickly.

¶ 12    Shortly afterwards, Peters, along with Griffin, watched surveillance video of the defendant as he walked toward the restroom. According to Peters, the video showed the defendant pour the contents of a small bottle into the sample-collection cup. After watching the video, Griffin asked the defendant whether he had anything else in his possession, and he "produced another bottle with a urine-looking substance in it." Peters identified State's Exhibit 4 as a photograph of that small bottle filled with a liquid that appeared to be urine. Griffin told the defendant that he would have to submit another sample, but he did not. Peters did not recover the bottle from which the defendant had poured liquid into the sample-collection cup during the walk to the bathroom. However, he did find a bottle cap on the floor outside the door to the probation office, which had not been there previously. He identified State's Exhibit 5 as a photograph of the bottle cap. Peters also identified State's Exhibit 6 as a zip drive that contained a true and accurate copy of the surveillance video recorded on March 8, 2024. The court subsequently admitted the State's Exhibits 4 through 6 into evidence, without objection by the defendant.

5

¶ 13    State's Exhibit 6, the video, showed the defendant as he walked down a hallway, with Deputy Peters walking behind him. During the short walk, the defendant is seen holding the sample-collection cup in his left hand. Using his right hand, the defendant takes something from his belt area and brings it into contact with the cup.

¶ 14    The defendant testified on his own behalf that on March 8, 2024, he had taken a bottle of urine into the probation office, but it was his own urine. He explained that "the first time I had to do this it took me, like, two hours and I was late for my hand surgery *** . And I just thought it would be quicker because I had an appointment later on that day at the VA." The defendant denied trying to be sneaky or defraud the test.

¶ 15    The circuit court found that the defendant had violated conditions of his probation in both the instant case and case No. 21-CF-85. The court found that the State had met its burden of proving that the defendant had defrauded a drug screen on March 8, 2024, and that he had "lab-confirmed positive drug screens" for cocaine on February 9, 2024, for amphetamine or methamphetamine on May 8, 2024, and for THC and amphetamines on April 24, 2024. The court ordered preparation of a presentence investigation report (PSI) and scheduled a sentencing hearing.

¶ 16    The PSI showed a criminal history that mainly consisted of misdemeanors, dating back to the mid-1980s. In more recent years, the defendant had been convicted of criminal trespass to a building, a Class B misdemeanor, in 2022, and violation of an order of protection, a Class A misdemeanor, in 2017.

¶ 17    On July 25, 2024,the circuit court held a resentencing hearing in both the instant case and case No. 21-CF-85. The State offered into evidence State's Exhibit 1, which was the original police report in the instant case; State's Exhibit 2, which was the original police report in case No. 21-CF-85; and State's Exhibit 3, which was two photographs showing the victim's injuries in case

No. 21-CF-85. Over the defendant's objection, the court admitted these three exhibits into evidence. The State did not offer testimony. The defendant testified that he was "an addict" who would benefit from inpatient drug treatment. The defendant believed that if he were placed on probation, he would comply with the conditions of his probation. Finally, the defendant testified that he understood that he could not bring a bottle of urine, even his own, for use in a drug test. In a statement in allocution, the defendant stated that the victim in the two cases had "hit herself," and that he and she "still talk." He said that he "teach[es] kids at the National Guard Armory." The defendant stated that he was a military veteran whose former squad "saved 17 hostages in Granada."

¶ 18　　The circuit court did not find any factors in mitigation. In aggravation, the court found that the defendant's conduct caused or threatened serious harm, that the defendant had a history of prior delinquency or criminal activity, that the sentence was necessary to deter others from committing the same crime, that the defendant was convicted of a felony "committed while he was on release," and that probation would deprecate the seriousness of the offender's conduct. The court then imposed sentences in the two cases. In the instant case, the court sentenced the defendant for aggravated battery on a public way to four years of imprisonment, to be followed by six months of mandatory supervised release (MSR). In case No. 21-CF-85, the court sentenced him to three years of imprisonment, followed by four years of MSR. The prison sentences were to run concurrently.

¶ 19　　The defendant filed, in both the instant case and case No. 21-CF-85, a timely motion to reconsider the finding of a violation of probation and to reconsider the sentences. The court denied the motion. On August 16, 2024, the defendant filed, in both cases, a timely notice of appeal from the revocation of probation.

7

¶ 20                                    II. ANALYSIS

¶ 21    As previously noted, OSAD has filed an *Anders* motion to withdraw as counsel. In the brief that accompanies the motion, OSAD has identified three potential issues on appeal: (1) whether the underlying judgment arising from the defendant's guilty plea is subject to attack in this appeal, (2) whether the State proved by a preponderance of the evidence that the defendant violated the conditions of his probationl, and (3) whether the circuit court abused its discretion when it sentenced the defendant to prison or in denying his motion to reconsider sentence. OSAD has concluded that each of these potential issues lacks arguable merit. This court will address each issue.

¶ 22    OSAD's first potential issue on appeal is whether the underlying judgment—*i.e.*, the judgment of conviction that was entered on November 9, 2022—is subject to attack in the instant appeal. "When no direct appeal is taken from an order of probation and the time for appeal has expired, a reviewing court is precluded from reviewing the propriety of that order in an appeal from a subsequent revocation of that probation, unless the underlying judgment of conviction is void." *People v. Johnson*, 327 Ill. App. 3d 252, 256 (2002).

¶ 23    Here, no direct appeal was taken from the order of probation, and the time for appeal has expired. The defendant was required to file a motion to withdraw his guilty plea or a motion to reconsider his sentence within 30 days after the sentence of probation was imposed on November 9, 2022, or else a direct appeal would be precluded. See Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). The defendant filed no such motion, and therefore, a direct appeal was precluded. Furthermore, nothing in the record suggests that the underlying judgment of conviction is void. That is, nothing indicates that the judgment (1) was entered by a court that lacked personal or subject-matter jurisdiction or (2) was based on a statute that was facially unconstitutional and void

8

*ab initio*. See *People v. Abdullah*, 2019 IL 123492, ¶ 13. Therefore, no challenge to the underlying judgment may be raised in this appeal.

¶ 24    OSAD's second issue is whether the State proved by a preponderance of the evidence that the defendant violated the conditions of his probation. When the State files a petition charging a violation of a condition of probation, "[t]he State has the burden of going forward with the evidence and proving the violation by the preponderance of the evidence." 730 ILCS 5/5-6-4(c) (West 2022). This court will not reverse the circuit court's decision to revoke probation unless that decision is against the manifest weight of the evidence. *People v. Williams*, 303 Ill. App. 3d 264, 267-68 (1999). A finding is against the manifest weight of the evidence if a contrary result is clearly evident. *People v. Clark*, 313 Ill. App. 3d 957, 959-60 (2000).

¶ 25    Here, probation officer Griffin testified that the defendant had tested positive for various illicit drugs on three separate dates during the period of probation, in violation of a condition of probation. Griffin's testimony was not disputed. The testimony of Deputy Peters and Griffin, along with the video of the defendant as he walked toward the bathroom where he was to provide a urine sample, established that the defendant had attempted to defraud a drug screening test on March 8, 2024, in violation of other conditions of probation. The defendant's explanation for his behavior on March 8, 2024—that he was simply trying to save time by bringing a bottle of his own urine for use in the drug test—was not credible. The circuit court's decision to revoke the defendant's probation was not against the manifest weight of the evidence.

¶ 26    OSAD's third issue is whether the circuit court abused its discretion when it sentenced the defendant to prison or in denying his motion to reconsider sentence. The circuit court has broad discretionary powers in imposing a sentence. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). Where a sentence falls within the statutory range, it will not be overturned on appeal absent an abuse of

discretion. *People v. Bunning*, 2018 IL App (5th) 150114, ¶ 16. "An abuse of discretion occurs only if a sentence greatly varies from the spirit and purpose of the law or where it is manifestly disproportionate to the nature of the offense." *Id.* A reviewing court gives great deference to the circuit court's judgment regarding sentencing because the circuit court has been able to observe the defendant and the proceedings, while the reviewing court "must rely on the 'cold' record." *People v. Fern*, 189 Ill. 2d 48, 53 (1999). When a defendant's probation is revoked, the circuit court should impose a sentence that would have been appropriate for the underlying offense in the first place. *People v. Pina*, 2019 IL App (4th) 170614, ¶ 30. The sentence should be based on the criminal conduct that constituted the original offense, rather than on the conduct that led to the probation revocation. *People v. Miller*, 2021 IL App (2d) 190093, ¶ 23. However, the court may consider the defendant's conduct while on probation when assessing his rehabilitative potential. *Id.*

¶ 27    Here, the defendant's offense, aggravated battery on a public way, was a Class 3 felony, which was punishable by two to five years in prison, or by probation for a period not exceeding 30 months. See 730 ILCS 5/5-4.5-40(a), (d) (West 2020). The court sentenced the defendant to four years in prison, concurrent with the three years imposed in case No. 21-CF-85. In light of the harm caused or threatened to the victim of this aggravated battery, the defendant's lengthy history of criminality, and the defendant's mendacious behavior during probation in this case, the sentence does not represent an abuse of the circuit court's discretion.

¶ 28                               III. CONCLUSION

¶ 29    Each of the potential issues raised by OSAD in its *Anders* brief lacks arguable merit. This court's examination of the record on appeal does not reveal any other issue that could serve to

disturb the judgment in this case. Accordingly, OSAD is granted leave to withdraw as appellate counsel, and the judgment of the circuit court is affirmed.

¶ 30    Motion granted; judgment affirmed.