NOTICE

Decision filed 05/18/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250233-U

NO. 5-25-0233

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 24-CF-1486 |
| | ) | |
| LEWIS M. NEAL, | ) | Honorable |
| | ) | Randall B. Rosenbaum, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HACKETT delivered the judgment of the court.
Justices Barberis and Sholar concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The evidence was sufficient to prove the defendant guilty of aggravated assault, the defendant knowingly and voluntarily waived a jury trial, trial counsel was not ineffective for calling a witness who corroborated a State's witness's testimony, and the defendant's prison sentence was not excessive. Because no argument to the contrary would have arguable merit, this court grants the defendant's appellate counsel leave to withdraw and affirms the trial court's judgment of conviction.

¶ 2    The trial court found the defendant, Lewis M. Neal, guilty of aggravated assault and leaving the scene of a property damage accident. The court subsequently sentenced him, respectively, to 3 years of imprisonment and a concurrent term of 364 days of incarceration. The defendant now appeals from the judgment of conviction. His appointed appellate counsel, the Office of the State Appellate Defender (OSAD), has concluded that this direct appeal has no arguable merit and, on that basis, has filed a motion to withdraw as counsel along with a supporting brief. See *Anders v.*

1

*California*, 386 U.S. 738 (1967); *People v. Jones*, 38 Ill. 2d 384 (1967). OSAD served proper notice on the defendant, and this court gave him ample opportunity to file a response to OSAD's *Anders* motion, but he has not filed a response. Having examined OSAD's *Anders* motion and brief, and the entire record on appeal, this court agrees with OSAD that this appeal has no merit. This court grants OSAD leave to withdraw as counsel and affirms the judgment of conviction.

¶ 3                                I. BACKGROUND

¶ 4     In November and December 2024, the defendant was charged by information and by indictment with various offenses. These offenses included aggravated assault, in violation of section 12-2(c)(7) of the Criminal Code of 2012 (720 ILCS 5/12-2(c)(7) (West 2022)), and leaving the scene of a property damage accident, in violation of section 11-402(a) of the Illinois Vehicle Code (625 ILCS 5/11-402(a) (West 2022)). The trial court appointed counsel for the defendant.

¶ 5     On February 10, 2025, counsel informed the trial court that the defendant was requesting a bench trial and had prepared a jury waiver. Turning to the defendant, the court asked whether it was correct that he wished to waive his right to a jury trial and have a bench trial, and the defendant answered in the affirmative. The court admonished the defendant that he had a right to a jury trial and that he alone could decide whether to waive that right. The colloquy continued:

> "THE COURT: *** Have you had enough time to think about this decision and discuss it with your attorney?
> THE DEFENDANT: Yes.
> THE COURT: Is it your decision to waive your right to have a jury trial and proceed to a bench trial then?
> THE DEFENDANT: Yes.
> THE COURT: And you understand that, if that happens, that there will not be a jury trial, and your trial will be heard in front of a judge alone?
> THE DEFENDANT: Yes.
>                                   * * *
> THE COURT: *** Has anyone forced or threatened you in any way to get you to waive your right to a jury trial?
> THE DEFENDANT: No.

2

THE COURT: And have any promises been made to you to get you to waive your jury trial rights?
THE DEFENDANT: No.
THE COURT: All right. And are you doing this of your own free will, meaning voluntarily?
THE DEFENDANT: Yes."

Then, the court found that the defendant had "knowingly, understandingly and voluntarily" waived his jury-trial right, and it made the defendant's written jury waiver a part of the record. The court scheduled the case for a bench trial.

¶ 6    On February 11, 2025, the cause proceeded to a bench trial on the two counts named above—aggravated assault and leaving the scene of a property damage accident. Four witnesses testified for the State, and one witness testified for the defendant. The defendant chose not to testify.

¶ 7    For the State, Barbara Etchason, a 72-year-old Urbana resident, testified that on November 1, 2024, at approximately 2 p.m., she was driving her "small" 1999 Chevrolet Prism in Urbana. She had just turned off Main Street, onto southbound Cottage Grove Avenue, when she saw a young black woman running down the street and loudly pleading for help. The young woman opened the door to Etchason's car and got in. Etchason had never seen the young woman before, but she decided to let the woman remain in her car.

¶ 8    Etchason further testified that traffic had backed up on Cottage Grove Avenue, in each direction. She decided to drive to Urbana police headquarters. A "huge" vehicle, a Cadillac Escalade, was also on the road. It was driven by a man whom Etchason had not seen before, but whom she identified at trial as the defendant. The Escalade was "barreling down" behind Etchason's car. She felt and heard the Escalade as it hit her rear bumper. Etchason turned right, onto a side street, headed to the Urbana police station. She again saw the defendant as he came "barreling" behind her car. The defendant drove to the left of Etchason's car and, getting in front

3

of it, he "[took] his car to an angle in the street" and blocked them from proceeding. Etchason abruptly stopped. The defendant got out of his vehicle and held up a cellphone. The young woman inside Etchason's car screamed that she did not want the cellphone, and she urged Etchason to get away from the defendant. Etchason backed up her car and went down another side street. Now, they were headed toward Main Street again. As they approached a stop sign, Etchason saw the defendant "barreling up" behind her car. He turned his vehicle and "slam[med] into the front headlight," putting a dent in the front of her car. According to Etchason, the defendant was "purposely trying" to sideswipe and hit her car. "He takes off to the right going to East Main," while Etchason turned left onto Main Street, headed to the Urbana police headquarters. During this entire episode, Etchason feared for her safety.

¶ 9      According to Etchason, she and her passenger arrived at Urbana police headquarters and quickly found help. The only portion of Etchason's car with visible damage was at the front, on the driver's side. She identified State's exhibit 4b as a photograph depicting the damage. The photo showed the driver's side of a small car, with a dent near the front of the car.

¶ 10      Brian Ingram, a patrol sergeant with the Urbana Police Department, testified that on November 1, 2024, at approximately 2:25 p.m., he was walking out of Urbana police headquarters toward his squad car. A fast-moving car pulled into the lot. Two women were inside the car. Ingram identified the driver as Barb Etchason. Etchason appeared upset and scared. The car's passenger was very distraught. When the passenger stated that she was injured, Ingram accompanied her to the adjacent fire department headquarters, where medically-trained personnel could be found. At the time, Ingram was wearing a body camera that recorded video and audio. He identified State's exhibit 2 as footage from his encounter with the two women. The footage was consistent with Ingram's testimony. As for the car itself, Ingram observed "damage on the front driver's side

4

bumper around the headlight and turn signal." Ingram remembered "scratches in the paint," but he did not remember seeing dents on the car. Ingram did not hear dispatch advise over the radio that anyone else had reported being involved in a collision with Etchason's car.

¶ 11 Zachary Ackerman, a patrol officer with the Urbana police, testified that on November 1, 2024, at 2:30 p.m., he was on patrol when he was called to police headquarters. At headquarters, he learned that two women had arrived there in a car. He spoke with one of them, Jessica. "Jessica was upset, voice shaking." She told Ackerman that she had been the victim of a battery. Ackerman observed "a bruise on one of her eyes, and she was holding one of her arms as well." After speaking with Jessica, Ackerman went to a house on Briarcliff Drive in Urbana. There, Ackerman "observed a male in the driveway," but by the time Ackerman got out of his car and approached, the man either had entered a residence or had gone behind one.

¶ 12 Connor Thomason, a patrol officer with the Urbana police, testified that on November 4, 2024, the defendant appeared at police headquarters for an interrogation. Thomason asked the defendant about events on November 1, and the defendant stated that he had been involved in a collision with a white car in Urbana on that date. Thomason provided the following testimony regarding the defendant's account of the circumstances of the collision. The defendant stated that the driver of the other car was a white woman, and Jessica, a woman with whom he had been in a relationship, was the passenger in the car. The defendant explained why he had not phoned to report his involvement in an accident. "He stated that he was trying to stay away from the passenger in the vehicle and that the other vehicle had pulled off so he thought that it had committed a hit and run, and due to the damage being minor on his vehicle, he—he just wanted to leave the area." Thomason further testified that another police officer had used his body camera to record

Thomason's interrogation of the defendant. Thomason identified State's exhibit 3 as the recording of the interrogation.

¶ 13    The recording of the interrogation was consistent with Thomason's trial testimony regarding the defendant's statements. In the video, the defendant stated that he had stepped out of his house, near Cottage Grove Avenue, when he noticed the white car. He stated that he saw Jessica in the white car, though a white woman was driving it. The defendant did not want to be near Jessica. As the defendant described events, he was peaceably attempting to drive his Escalade. However, the white car kept following him, and its driver repeatedly maneuvered the car so as to stop him. As a consequence of the other driver's actions, the defendant's Escalade was damaged, though not seriously, and the defendant decided not to report the incident to police.

¶ 14    For the defense, Christopher Koll testified that he was an investigator with the public defender's office. His past employment included four years as a Pittsburgh police officer and one year as an accident investigator for State Farm. Koll was assigned to photograph the defendant's Cadillac Escalade, which had been involved in an incident on November 1, 2024. He identified defense exhibits 1a through 1i as photos he took. The Escalade had "damage to the running board on the passenger side" and, slightly above the damaged running board, it had "a slight white paint transfer" on the front passenger door and the rear passenger door. There was no other damage visible on the Escalade. Based on his experience, Koll thought that "a typical collision that would cause that [type of damage] is a sideswipe collision."

¶ 15    The trial court found Etchason "believable" and seemed skeptical of the defendant's statements to police. The court found the defendant guilty of aggravated assault and leaving the scene.

6

¶ 16   On February 13, 2025, the defendant filed a written motion for acquittal or, in the alternative, a motion for a new trial. The motion focused exclusively on whether the evidence supported a finding of guilt on the aggravated-assault count.

¶ 17   On March 18, 2025, the trial court held a hearing on the defendant's motion for acquittal or in the alternative for a new trial. After hearing argument, the court denied the motion. The court immediately proceeded to sentencing.

¶ 18   The presentence investigation report (PSI) showed that between 2003 and 2012, the defendant had accumulated 15 misdemeanor convictions for driving on a revoked or suspended license. In 2011, he was convicted of failure to report an accident involving personal injury, a Class 3 felony. The defendant also had felony drug convictions in 2000 and 2001. In 2006, he was convicted of misdemeanor domestic battery. In 2024, he was convicted of domestic battery with a prior domestic battery conviction, a Class 4 felony, for which he was sentenced to 15 months in prison. For this last offense, the defendant was on mandatory supervised release at the time he committed the instant offenses.

¶ 19   At the sentencing hearing, no witnesses testified. The defendant introduced exhibits that included a driving abstract, which showed that the defendant's driving privileges had been restored. The parties made recommendations as to sentencing.

¶ 20   Before imposing the sentence, the trial court stated that it had considered the PSI, "all statutory and nonstatutory factors in aggravation and mitigation," and the history and character of the defendant. The court noted the seriousness of the defendant's criminal behavior and that it had "terrified" Etchason and put the community at risk of harm. In aggravation, the court noted that the defendant had a "lengthy criminal history," mostly traffic-related, and that he had been "on parole at the time of the commission of these offenses." In mitigation, the court noted that the

defendant had earned a GED, was the father of four children, including one minor, and had suffered a stroke in 2022. According to the court, a "deterrent message" needed to be sent to the defendant.

¶ 21    For the offense of aggravated assault, which was a Class 4 felony (see 720 ILCS 5/12-2(d) (West 2022)), the trial court imposed a sentence of imprisonment for three years, plus a six-month term of mandatory supervised release. For leaving the scene of a property damage accident, a Class A misdemeanor (625 ILCS 5/11-402(a) (West 2022)), the court imposed a concurrent sentence of 364 days of incarceration. The defendant did not file a written postsentencing motion.

¶ 22    On the defendant's behalf, the clerk of the circuit court filed a timely notice of appeal from the judgment of conviction. The trial court appointed OSAD to represent the defendant on appeal.

¶ 23                                II. ANALYSIS

¶ 24    This appeal is a direct appeal. In its *Anders* brief, OSAD raises four potential issues: (1) whether the evidence was sufficient to prove the defendant guilty beyond a reasonable doubt of aggravated assault; (2) whether the defendant knowingly and voluntarily waived his right to a jury trial; (3) whether trial counsel was ineffective for calling a witness who corroborated Etchason's trial testimony; and (4) whether the defendant's three-year prison sentence was excessive. OSAD concludes that these issues are without arguable merit. This court agrees.

¶ 25    In regard to OSAD's first potential issue, an appellate court will affirm a conviction if, after viewing the evidence in the light most favorable to the State, it finds that "*any* rational trier of fact" (emphasis in original) could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Also, the credibility of witnesses, and the weight to be given to their testimonies, is exclusively within the province of the trier of fact. *People v. Collins*, 106 Ill. 2d 237, 261-62 (1985).

8

¶ 26 The crime of aggravated assault can be committed in various ways. In the instant case, the essential elements of aggravated assault consisted of operating a motor vehicle in a manner that places a person, without justification, in reasonable apprehension of being struck by the moving motor vehicle. See 720 ILCS 5/12-2(c)(7) (West 2022).

¶ 27 Here, the defendant's guilt or innocence on the charge of aggravated assault turned on witness credibility, as the trial court seemed to acknowledge. At the defendant's bench trial, the court found Etchason's trial testimony credible, and it found the defendant's recorded statements to police less than credible, after hearing their very different accounts of their actions on Urbana's streets. Etchason described very aggressive driving by the defendant, as he repeatedly attempted to stop her car. It was within the province of the court to credit Etchason's testimony. Furthermore, the physical damage to Etchason's and the defendant's vehicles favored Etchason's account of events. As even the public defender's own investigator acknowledged at trial, the damage on the passenger side of the defendant's Escalade was consistent with "a sideswipe collision," which was in line with Etchason's account. The evidence was sufficient for a rational trier of fact to find the defendant guilty beyond a reasonable doubt of aggravated assault.

¶ 28 OSAD's second potential issue is whether the defendant knowingly and voluntarily waived his right to a jury trial. The defendant has forfeited this claim by failing to raise it in the trial court. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (to preserve an issue for appellate review, a defendant must both make a trial objection and raise the issue in a posttrial motion). However, since a jury waiver involves a fundamental right, this court will address the claim as plain error. See *People v. Bracey*, 213 Ill. 2d 265, 270 (2004).

¶ 29 Before deciding whether plain error occurred, a reviewing court must first decide whether any error at all occurred. See *People v. Bannister*, 232 Ill. 2d 52, 65 (2008). As the pertinent facts

9

are undisputed, review is *de novo*. *Id.* at 66. A criminal defendant has a right to a jury trial unless he understandingly waives that right in open court. 725 ILCS 5/103-6(i) (West 2022). The trial court must ensure the defendant's waiver is both express and understanding. *Bannister*, 232 Ill. 2d at 66. Determining whether these requirements have been met depends on the particular facts of the case. *Id.*

¶ 30    Here, at the waiver hearing on February 10, 2025, the defendant, his attorney, and the State appeared in open court. Defense counsel stated on the record that the defendant wanted a bench trial, and he presented a jury waiver that the defendant had signed. Through the court's questioning of the defendant, it became clear that the defendant wished to waive his right to a jury trial and to have a bench trial instead; that he understood that he alone could make the waiver decision; that he had discussed the matter sufficiently with his attorney; and that if he waived his right to a jury trial, his case would be heard by the court alone, not by a jury. Also, in response to the court's queries, the defendant made plain that his waiver was not the result of force or threats, or of promises, but was an act of his own free will. These facts are more than sufficient to show that the defendant validly waived his jury-trial right.

¶ 31    OSAD's third potential issue is whether trial counsel was ineffective for calling a witness, Christopher Koll, who corroborated Etchason's trial testimony. To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984); *People v. Albanese*, 104 Ill. 2d 504, 525 (1984). Both prongs of the *Strickland* test—deficiency and prejudice—must be shown to establish

ineffective assistance, and the failure to establish either prong will be fatal to the defendant's claim. *People v. Richardson*, 189 Ill. 2d 401, 411 (2000).

¶ 32 Here, Koll testified to the damage he observed on the passenger side of the defendant's Escalade. Koll also opined that, based on his experience, "a typical collision that would cause that [type of damage] is a sideswipe collision." Thus, Koll seemed to corroborate Etchason's testimony that it was the defendant who drove aggressively, repeatedly trying to hit Etchason's own car. However, as OSAD states in its *Anders* brief, while it may have been an error for counsel to call a witness who bolstered the State's case, the error "did not ultimately prejudice [the defendant]. After all, the judge explicitly noted that he found Etchason **** to be credible in her own right, and based his decision on that determination." An ineffective-assistance argument would be without merit where the trial's outcome would have been the same regardless of whether Koll had testified.

¶ 33 OSAD's fourth potential issue is whether the defendant's three-year prison sentence for aggravated assault was excessive. Here, the defendant did not raise this excessive-sentence argument in the trial court. He did not file a written postsentencing motion at all. "[A] defendant forfeits appellate review of any sentencing issue not raised in the trial court in a written postsentencing motion." *People v. Lewis*, 234 Ill. 2d 32, 42 (2009). Thus, the defendant forfeited this sentencing issue.

¶ 34 However, a forfeited sentencing claim may be reviewed under the plain error doctrine, which is a "narrow and limited exception" to forfeiture. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). The defendant has the burden of persuasion, and he must first establish that a "clear or obvious error occurred." *Id.* For sentencing errors, the defendant must then show either that "(1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as

11

to deny the defendant a fair sentencing hearing." *Id.* This court must honor the procedural default where a defendant fails to establish plain error. *People v. Naylor*, 229 Ill. 2d 584, 593 (2008). As with OSAD's second potential issue in this appeal, which concerned the defendant's waiver of his jury-trial right, this court must first determine whether any error at all occurred during sentencing. *Id.*

¶ 35 Where an imposed sentence "falls within the statutory limits, it will not be overturned on appeal absent an abuse of discretion." *People v. Bunning*, 2018 IL App (5th) 150114, ¶ 16. "An abuse of discretion occurs only if a sentence greatly varies from the spirit and purpose of the law or where it is manifestly disproportionate to the nature of the offense." *Id.*

¶ 36 Aggravated assault, as charged in this case, was a Class 4 felony. See 720 ILCS 5/12-2(c)(7), (d) (West 2022). As such, it was punishable by a sentence of imprisonment for a term of one to three years, or for an extended term of three to six years. See 730 ILCS 5/5-4.5-45(a) (West 2022). Because the instant conviction for aggravated assault occurred within 10 years after his previous conviction for another Class 4 felony (see *id.* § 5-5-3.2(b)(1)), the defendant was eligible for an extended term of imprisonment.

¶ 37 The trial court has broad discretionary powers in imposing a sentence, and its sentencing decision is entitled to great deference. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). After all, the trial court "is normally in a better position to determine the punishment to be imposed than the courts of review." *People v. Perruquet*, 68 Ill. 2d 149, 154 (1977). Such a determination is case-specific, and it "depends upon many factors, including the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *Id.*

¶ 38　Here, the trial court imposed a three-year sentence for aggravated assault. It was the maximum nonextended-term sentence. Because the sentence fell within the statutory range, this court cannot overturn the sentence absent an abuse of discretion.

¶ 39　The trial court approached the defendant's sentencing in the required case-specific manner. As the court made clear during its detailed findings at the end of the sentencing hearing, the court considered the facts and circumstances as well as the defendant's personal and criminal history. His criminal history included, *inter alia*, 15 convictions for driving on a revoked or suspended license and a 2011 conviction for failure to report an accident involving personal injury, an offense similar to one of the offenses here. He also committed the instant offenses while on mandatory supervised release for an earlier crime. In the end, the court imposed a sentence for aggravated assault that was within the statutory range and that was not disproportionate to the nature of the offense.

¶ 40　No error occurred at the defendant's sentencing. Therefore, there can be no plain error. See *People v. Hood*, 2016 IL 118581, ¶¶ 18, 29 (without a finding of error, there can be no plain error).

¶ 41　　　　　　　　　　　　　III. CONCLUSION

¶ 42　None of OSAD's potential issues has arguable merit. This court's own examination of the record on appeal does not reveal any issue that could reasonably lead to a reversal or modification of the judgment of conviction. Accordingly, this court grants OSAD leave to withdraw as the defendant's appellate counsel and affirms the judgment of conviction entered by the trial court.

¶ 43　Motion granted; judgment affirmed.